**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **RIVERS END OUTFITTERS, LLC; CHRIS** | : | |
| **WILSON; MEXICAN GULF FISHING** | : | |
| **COMPANY; BILLY WELLS; A&B CHARTERS** | : | |
| **INC.; ALLEN WALBURN; KRAIG DAFCIK;** | : | |
| **CAPT. JOEY D CHARTER INC.; JOEY DOBIN;** | : | |
| **VENTIMIGLIA LLC, d/b/a SANIBEL** | : | |
| **OFFSHORE FISHING CHARTERS; FRANK** | : | |
| **VENTIMIGLIA; FISHING CHARTERS OF** | : | |
| **NAPLES; JIM RINCKEY,** | : | |
| | : | |
| | : | |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | |
| | : | |
| **U.S. DEPARTMENT OF COMMERCE;** | : | |
| **WILBUR L. ROSS, JR., in his official** | : | |
| **capacity as Secretary of Commerce;** | : | Civil Action No. 2:20-cv-2312 |
| **NATIONAL OCEANIC AND** | : | |
| **ATMOSPHERIC ADMINISTRATION;** | : | |
| **NEIL JACOBS, in his official capacity as** | : | |
| **Acting Administrator of NOAA;** | : | |
| **NATIONAL MARINE FISHERIES** | : | |
| **SERVICE, a/k/a NOAA FISHERIES;** | : | |
| **CHRIS OLIVER, in his official capacity** | : | |
| **as Assistant Administrator for** | : | |
| **NOAA Fisheries,** | : | |
| | : | |
| *Defendant*s. | : | |

Plaintiffs submit this Complaint for Permanent Injunctive and Declaratory Relief to prohibit the

Department of Commerce ("Commerce") by and through the National Oceanic and Atmospheric

Administration ("NOAA") and the National Marine Fisheries Service ("NMFS") (collectively,

"Defendants"), from enforcing an unlawful and unconstitutional, industry-funded, warrantless 24-

hour Global Positioning System ("GPS") surveillance of location and movement of each vessel via

the Vessel Monitoring System ("VMS"), targeting a select group of federally permitted charter boats

and headboats in the Gulf of Mexico.  It was promulgated through the Gulf of Mexico Fishery

Management Council ("Gulf Council") and the South Atlantic Fishery Management Council's ("South Atlantic Council") Gulf For-hire Reporting Amendment ("Gulf For-hire Reporting Amendment"), *available at* https://bit.ly/GulfForhireAmendment, and the July 21, 2020 Final Rule, *see* 85 Fed. Reg. 44005 (July 21, 2020) (to be codified at 50 C.F.R. pt. 622) ("Final Rule"), implementing the Gulf For-hire Reporting Amendment. On August 7, 2020, Defendants delayed the implementation of the Final Rule until January 4, 2021. *See* NOAA Fisheries Announces a Delay in Effective Date for New For-Hire Electronic Reporting Requirements in the Atlantic, FB20-052 (Aug. 7, 2020), *available at* https://bit.ly/FB20-052.

## INTRODUCTION

The Plaintiffs are either Captains of charter boats or the Companies that own the boats that take customers into the Gulf of Mexico to fish. They bring this suit on their own behalf and on behalf of the class of all those similarly situated. Under the Final Rule, each of the Plaintiffs' movements will be tracked by the government by a VMS device each of them will be forced to buy, which is an unconstitutional and unlawful infringement of Plaintiffs' rights. The Final Rule will confer virtually no benefit upon the Defendants in monitoring fish stocks in the Gulf of Mexico over cheaper and less intrusive methods. In addition, the Final Rule requires Plaintiffs to contact the Defendants whenever they wish to leave the dock, even if not fishing or using their federal permit in any way. This exercise of administrative overreach must be stopped.

## JURISDICTION AND VENUE

1.      This is an action arising under the Constitution of the United States for the violation of the Fourth, Fifth, and the Ninth Amendments; Magnuson-Stevens Fishery Conservation and Management Act, as amended by the Sustainable Fisheries Act, 16 U.S.C. § 1801 *et seq*. ("MSA"); the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*.; and the Regulatory Flexibility Act, 5 U.S.C. § 601 *et seq*. ("RFA").

2.    This Court has jurisdiction pursuant to the MSA. 16 U.S.C. §§ 1855(f), 1861(d). Review under the MSA is conducted in accordance with the APA, 5 U.S.C. § 701 *et seq.*

3.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and the APA, 5 U.S.C. § 701 *et seq.* The challenged rule is final and reviewable agency action. 5 U.S.C. § 704.

4.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and the RFA. 5 U.S.C. § 611.

5.    Venue is proper pursuant to 28 U.S.C. § 1391(e).

6.    Plaintiffs' petition for review is timely filed pursuant to the MSA and RFA. 16 U.S.C. § 1855(f); 5 U.S.C. § 611.

7.    This Court may issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 and grant permanent injunctive relief pursuant to the APA, 5 U.S.C. § 706; and the MSA, 16 U.S.C. §§ 1855(f), 1861(d).

## PARTIES

8.    Plaintiff RIVERS END OUTFITTERS, LLC ("Rivers End") is a limited liability company organized and operating under the laws of the State of Louisiana owned and operated by Captain Chris Wilson from 123 Bradley Place, Bell Chasse, Louisiana.  Rivers End owns and operates the 39-foot *Contender* which crews 2 and is federally permitted for 6 passengers.  It typically fishes snapper, grouper, tuna, wahoo, marlin, swordfish, and amberjack.

9.    Plaintiff CAPTAIN CHRIS WILSON is a resident of Louisiana and owns and operates Rivers End through which he charters passengers on the *Contender*.  He also uses the *Contender* recreationally for non-fishing trips.  If the Gulf For-hire Reporting Amendment implemented by the Final Rule becomes effective, his own movements will be tracked by the government whenever he is on the vessel.  In addition, his and his company's proprietary business information such as suppliers used, movements when not fishing, and other location-related information will be broadcast to the

Defendants for no legitimate purpose. There is no prohibition on Defendants sharing this information with other agencies, law enforcement or otherwise, without a warrant.

10. Plaintiff MEXICAN GULF FISHING COMPANY ("Mexican Gulf") is a limited liability company organized and operating under the laws of the State of Louisiana partially owned and operated by Captain Billy Wells out of Venice, Louisiana. It charters fishing trips for, primarily, yellow fin tuna but also billfish on the 42' catamaran *Wild Bill*. The *Wild Bill* can have 6 passengers.

11. Plaintiff CAPTAIN BILLY WELLS resides in Louisiana, operates Mexican Gulf, and captains the *Wild Bill* on chartered fishing trips. He also uses the vessel for personal non-fishing trips. If the Gulf For-hire Reporting Amendment implemented by the Final Rule becomes effective, his own movements will be tracked by the government whenever he is on the vessel. In addition, his and his company's proprietary business information such as suppliers used, movements when not fishing and other location-related information, including for sight-seeing, will be broadcast to the Defendants for no legitimate purpose. There is no prohibition on Defendants sharing this information with other agencies, law enforcement or otherwise, without a warrant.

12. Plaintiff A&B CHARTERS INC. is a corporation organized and operating under the laws of the State of Florida and owned and operated by Captain Allen Walburn. A&B Charters was his life-long project, founded over 41 years ago, and always headquartered in Naples, Florida. It owns and operates 3 commercial charter vessels each about 40-feet long , *A&B, Alabama,* and *All In*, which are federally permitted for commercial use, constructed to United States Coast Guard ("USCG") standards and specifications, and permitted to take up to 10 passengers in the federal waters of the Gulf of Mexico. A&B Charters offers customers inshore fishing in Naples, sportfishing, and deep-sea fishing. Customers may also rent a vessel for sightseeing, swimming, or some other leisurely purposes in conjunction with fishing.

13.   Plaintiff CAPTAIN ALLEN WALBURN, a resident of Florida, operates A&B Charters and operates his vessel in the Gulf of Mexico.  He uses it not only as a business, but personally to take family and friends to dinner or on other non-fishing events.  If the Gulf For-hire Reporting Amendment implemented by the Final Rule becomes effective, his own movements will be tracked by the government whenever he is operating the vessel.  In addition, his and his company's proprietary business information such as suppliers used, movements even when not fishing and other location-related information will be broadcast to the Defendants for no legitimate purpose. There is no prohibition on Defendants sharing this information with other agencies, law enforcement or otherwise, without a warrant.  Mr. Walburn also operates boats in Alaska where the NOAA requirement is simply to have a paper logbook of locations where fishing occurs and fish is caught.  Those logbooks are then countersigned by the charter customers.  This method is both less intrusive, less expensive, and because of the counter-signature more reliable than the Defendants' Gulf For-hire Reporting Amendment and Final Rule.

14.   Plaintiff CAPTAIN KRAIG DAFCIK is a resident of Florida and part owner of the *Alabama* (along with Plaintiff A&B Charters) that he captains through Alabama Fishing Charters, out of Port O Call Way, Naples, Florida.  He takes charters off-shore for pelagic and migratory fish species.  In addition, he captains the *Alabama* on private non-fishing trips with his wife and family. If the Gulf For-hire Reporting Amendment implemented by the Final Rule becomes effective, his own movements will be tracked by the government whenever he is operating the vessel.  In addition, his and his company's proprietary business information such as suppliers used, movements even when not fishing and other location-related information, including for sight-seeing, will be broadcast to the Defendants for no legitimate purpose. There is no prohibition on Defendants sharing this information with other agencies, law enforcement or otherwise, without a warrant.

5

15.    Plaintiff CAPT. JOEY D CHARTER INC. ("Joey D Charter") is organized and operating under the laws of the State of Florida and is also headquartered in Naples. Captain Joey Dobin owns and operates his eponymous business. He founded it over 18 years ago and now owns and operates four vessels, one of which is a 32-foot long vessel, *Still Dreamin*, which is federally permitted for commercial use, constructed to USCG standards and specifications, and permitted to take up to 6 passengers in the federal waters of the Gulf of Mexico. Captain Joey offers fishing charters for inshore and deep-sea fishing. Customers may also rent a boat for both fishing and non-fishing purposes, for instance, sight-seeing.

16.    Plaintiff CAPTAIN JOSEPH ("JOEY") DOBIN is a resident of Florida and operates Joey D. Charters and uses the *Still Dreamin* in the Gulf of Mexico both for fishing and non-fishing purposes. On information and belief, the Final Rule will cause him to hire a certified technician, for unknown amounts, to install the VMS device and then pay a company approximately $75.00 per month as a user fee for monitoring and also unknown amounts for repairs.  As further related below the Defendants have not identified vendors or systems and so exact cost is yet to be determined.  If the Gulf For-hire Reporting Amendment implemented by the Final Rule becomes effective, his own movements will be tracked by the government whenever he is operating the vessel.  In addition, his and his company's proprietary business information such as suppliers used, movements even when not fishing and other location-related information, including for sight-seeing, will be broadcast to the Defendants for no legitimate purpose. There is no prohibition on Defendants sharing this information with other agencies, law enforcement or otherwise, without a warrant.

17.    Plaintiff VENTIMIGLIA LLC D/B/A SANIBEL OFFSHORE FISHING CHARTERS. ("Sanibel") is a single-member limited liability company organized and operating under the laws of the State of Florida and headquartered in Fort Myers, Florida. Captain Frank Ventimiglia founded Sanibel 20 years ago. Sanibel owns and operates a 29-foot long vessel, *Miss Hayden*, which is federally permitted

for commercial use, constructed to USCG standards and specifications, and permitted to take up to 6 passengers in the federal waters of the Gulf of Mexico. Sanibel offers customers inshore/bay and offshore/deep-sea fishing charters.  Plaintiff primarily charters for grouper and snapper in the Gulf of Mexico off the coast of southwest Florida.

18.    Plaintiff CAPTAIN FRANK VENTIMIGLIA is a resident of Florida and an owner and operator of Sanibel that he operates out of Fort Meyers, Florida.  He takes the vessel *Miss Hayden* out for voyages other than fishing.  He is also the primary captain whose movements would be tracked by the government were the proposed rule go into effect.  If the Gulf For-hire Reporting Amendment implemented by the Final Rule becomes effective, his own movements will be tracked by the government whenever he is operating the vessel.  In addition, his and his company's proprietary business information such as suppliers used, movements even when not fishing and other location-related information will be broadcast to the Defendants to no legitimate purpose.  In addition, his and his company's proprietary business information such as suppliers used, movements when not fishing and other location-related information will be broadcast to the Defendants for no legitimate purpose. There is no prohibition on Defendants sharing this information with other agencies, law enforcement or otherwise, without a warrant.

19.    Plaintiff FISHING CHARTERS OF NAPLES ("Fishing Charters") is a Florida company organized and operated under the laws of Florida in Naples, Florida and associated with A&B Charters.  It is owned by Captain Jim Rinckey also of Naples, Florida.  He has owned and operated the company for six years and is federally permitted for 19 passengers and 2 crew to operate in the Gulf of Mexico.

20.    Plaintiff CAPTAIN JIM RINCKEY is a resident of Florida.  He owns and operates Fishing Charters and captains its vessel the *All In.*  He also uses the vessel for personal use and non-fishing trips. If the Gulf For-Hire Reporting Amendment and Final Rule becomes effective, his own

movements will be tracked by the government whenever he is operating the vessel.  In addition, his and his company's proprietary business information such as suppliers used, movements even when not fishing and other location-related information, including for sight-seeing, will be broadcast to the Defendants for no legitimate purpose. There is no prohibition on Defendants sharing this information with other agencies, law enforcement or otherwise, without a warrant.

## Defendants

21. Defendant UNITED STATES DEPARTMENT OF COMMERCE ("Commerce" or the "Department") is an agency of the United States of America. Under the MSA, the Department has primary management responsibility for domestic marine fisheries in federal waters, which it has delegated.

22. Defendant WILBUR L. ROSS, JR. is the Secretary of the United States Department of Commerce. He is sued in his official capacity.

23. Defendant NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION ("NOAA") is a scientific agency within Commerce. It has the delegated responsibility to manage domestic marine fisheries in federal waters, which it has sub-delegated to the National Marine Fisheries Service. NOAA promulgated the final rule at issue.

24. Defendant DR. NEIL JACOBS is the Assistant Secretary of Commerce for Environmental Observation and Prediction and Acting Administrator of NOAA. He is sued in his official capacity.

25. Defendant NATIONAL MARINE FISHERIES SERVICE ("NMFS" or "NOAA Fisheries") is a line office within NOAA. It has the sub-delegated responsibility to manage domestic marine fisheries in federal waters.

26. Defendant CHRIS OLIVER is the Assistant Administrator for NOAA Fisheries. He is sued in his official capacity.

## CONSTITUTIONAL, STATUTORY, AND REGULATORY BACKGROUND

**The Fourth, Fifth and Ninth Amendments**

27.   The Fourth Amendment protects the people against the government's "unreasonable searches and seizures." U.S. Const. amend. IV. The government conducts an unreasonable search by trespassing, without a warrant, into a personal property to gain information for use in potential prosecution against that person. *U.S. v. Jones*, 132 S. Ct. 945, 949 (2012).

28.   The Fourth Amendment protects a person's right to privacy; warrantless searches that violate a person's reasonable expectation of privacy are unreasonable and unconstitutional. *Katz v. U.S.*, 390 U.S. 347, 353 (1967).

29.   Warrantless access to the GPS information of a person's "detailed, encyclopedic, and effortlessly compiled" locations and movements violates the Fourth Amendment. *See Carpenter v. U.S.*, 138 S. Ct. 2206, 2209 (2018).

30.   The Fourth Amendment protects a person's possessory rights as it forbids the government from trespassing without a warrant.

31.   The Fifth Amendment protects life, liberty, and property from taking by the Government without due process of law.  U.S. Const. amend. V.

32.   The Ninth Amendment protects the people's freedom of movement, right to travel, rights to free enterprise, freedom from unreasonable governmental interference, right to privacy, and all other unenumerated rights retained by the people of the United States. U.S. Const. amend. IX.

**The Magnuson-Stevens Act and the Fishery Conservation and Management Framework**

33.  Recognizing the economic importance of commercial and recreational fishing, the MSA was adopted to protect, manage, and grow the United States' fishery resources. To achieve these goals, the MSA delineates scientific and conservation-based statutory obligations to sustainably manage fishery resources for the benefit of the fishing industry and the environment. 16 U.S.C. § 1801 *et seq.*

34.  The MSA grants Commerce the ability to exercise "sovereign rights" to conserve and manage fisheries resources "for the purposes of exploring, exploiting, conserving, and managing all fish" in the Exclusive Economic Zone ("EEZ"). 16 U.S.C. §§ 1801(b)(1), 1811(a). Generally, the EEZ extends from the seaward boundary of each of the coastal States to 200 nautical miles offshore. 16 U.S.C. § 1802(11).

35.  The MSA provides for the development and implementation of fishery management plans ("FMPs") for fisheries. 16 U.S.C. § 1801(b)(4). FMPs are implemented with the goal of continually achieving and maintaining optimum yield within such fishery. *Id.* All FMPs, and their implementing regulations, must be prepared and executed in accordance with ten fishery conservation and management "National Standards." *Id.*; 16 U.S.C. § 1851(a). At least, six of the standards are implicated by the Regulation:

   a.  National Standard One requires that "[c]onservation and management measures shall prevent overfishing while achieving, on a continuing basis, the optimum yield from each fishery for the United States fishing industry." 16 U.S.C. § 1851(a)(1).

   b.  National Standard Two requires that "[c]onservation and management measures shall be based upon the best scientific information available." 16 U.S.C. § 1851(a)(2).

   c.  National Standard Four requires that agency measures that "allocate or assign fishing privileges among various … fisherman" should be "fair and equitable" and "reasonably calculated to promote conservation." And "no particular individual,

corporation, or other entity [should] acquire[] an excessive share of such privileges." 16 U.S.C. § 1851(a)(4).

d.    National Standard Six requires that "[c]onservation and management measures shall take into account and allow for variations among, and contingencies in, fisheries, fishery resources, and catches." 16 U.S.C. § 1851(a)(6).

e.    National Standard Seven requires that "[c]onservation and management measures shall, where practicable, minimize costs and avoid unnecessary duplication." 16 U.S.C. § 1851(a)(7).

f.    National Standard Eight requires that "[c]onservation and management measures shall, consistent with the conservation requirements …, take into account the importance of fishery resources to fishing communities by utilizing economic and social data that [are based upon the best scientific information available], in order to (A) provide for the sustained participation of such communities, and (B) to the extent practicable, minimize adverse economic impacts on such communities." 16 U.S.C. § 1851(a)(8).

36.    The MSA prescribes the required and discretionary provisions of FMPs. 18 U.S.C. § 1853.

a.    Among other requirements, FMPs must include conservation and management measures; fishery descriptions; certain yield assessments; essential fish habitat identification; fishery impact statements; criteria for identifying overfishing within the fishery; standardized reporting methodology for bycatch analysis; and a mechanism for setting annual catch limits. 18 U.S.C. § 1853(a).

b.    Among other provisions, FMPs may include fishery permits; designation of limited or closed off fishing zones; limitations on catch and sale of fish; prohibitions and requirements related to gear types; requirements for carrying observers on board to collect

conservation and management data; reservation of portions of allowable catch for use in scientific research. 18 U.S.C. § 1853(b).

37.    Within the constitutional limit, the MSA purports to authorize warrantless access to VMS data *by the USCG* and other authorized law enforcement. 16 U.S.C. § 1861(b)(1)(A)(vi).  Before it can board or seize a vessel, or its catch, USCG or other authorized law enforcement must have "reasonable cause to believe" a law is being broken.  16 U.S.C. § 1861(b)(1)(A)(i). The MSA does not require charter boats to have or to collect such location related data.  Nor does it mention or contemplate a global positioning system or a 24-hour location and movement surveillance whether a vessel is being used to fish in federal waters under a federal permit or for other purposes that NOAA does not regulate.  There is no provision to collect information on vessel movements when the vessel is not fishing under its permit.

38.    The MSA permits information collections that are beneficial for developing, implementing, or revising FMPs. 18 U.S.C. § 1881a(a)(1). If a Council determines such information collection is necessary, it may request that the Secretary implement the collection. *Id.*  If the Secretary determines that the collection is justified, then the Secretary has the duty to promulgate regulations implementing the collection program. *Id.* If determined necessary, the Secretary may also initiate an information collection. 18 U.S.C. § 1881a(a)(2).

39.    The MSA establishes eight Regional Fishery Management Councils ("Councils"). 16 U.S.C. § 1852(a)(1). The Councils share fishery conservation, management, and regulatory responsibilities with Commerce and NOAA. Two of the Councils are particularly relevant here:

a.    The Gulf of Mexico Fishery Management Council ("GMFMC") which manages fishery resources in the U.S. waters of the Gulf of Mexico.

b.    The South Atlantic Fishery Management Council ("SAFMC") which is responsible for the federal waters off North Carolina, South Carolina, Georgia and East Florida to Key West.

40.    The Councils prepare, monitor, and revise FMPs. 16 U.S.C. § 1801(b)(5). The Councils, in conjunction with the Secretary, may also propose regulations implementing or modifying an FMP or plan amendment. 18 U.S.C. § 1853(c); *cf.* 18 U.S.C. § 1855(d).

41.    The Councils also provide a forum through which the fishing industry, as well as other interested parties, can take an active role in advising, establishing, and administering FMPs. 16 U.S.C. § 1801(b)(5).

42.    The MSA prescribes the required and discretionary provisions of FMPs. 18 U.S.C. § 1853.

43.    The MSA permits information collections that are beneficial for developing, implementing, or revising FMPs. 18 U.S.C. § 1881a(a)(1). If a Council determines such information collection is necessary, it may request that the Secretary implement the collection. *Id.*  If the Secretary determines that the collection is justified, then the Secretary has the duty to promulgate regulations implementing the collection program. *Id.* If determined necessary, the Secretary may also initiate an information collection. 18 U.S.C. § 1881a(a)(2).

## The Regulatory Flexibility Act

44.    The RFA requires administrative agencies to consider the effect of their actions on small entities, including small businesses. The purpose of the RFA is to enhance agency sensitivity to the economic impact of rulemaking on small entities to ensure that alternative proposals receive serious consideration at the agency level.

45.    The RFA provides that, whenever an agency is required by the APA to publish a general notice of proposed rulemaking, it must prepare and make available for public comment an Initial Regulatory Flexibility Analysis ("IRFA"), 5 U.S.C. § 603(a), and subsequently prepare and make

13

public a Final Regulatory Flexibility Analysis ("FRFA"). 5 U.S.C. § 604. An agency must also publish the FRFA or a summary of the FRFA in the *Federal Register*. 5 U.S.C. § 604(b).

46.    When an agency takes a final action that is subject to the RFA, including the promulgation of final rules, but does not comply with the RFA, "a small entity that is adversely affected or aggrieved by final agency action is entitled to judicial review." 5 U.S.C. § 611(a).

47.    Under NMFS regulations, the "small business size standard" for commercial fishing businesses, and their affiliates, "is $11 million in annual gross receipts." 50 C.F.R. § 200.2; 5 U.S.C. § 601(3).

48.    All Plaintiffs in this action meet the standard for "small business size standard" under the RFA.

### The Gulf For-hire Reporting Amendment and FINAL RULE, 85 Fed. Reg. 44005 (July 21, 2020) (to be codified at 50 C.F.R. pt. 622).

49.    As outlined in the Final Rule:

> On June 21, 2018, NMFS published a notice of availability ("NOA") for the Gulf For-hire Reporting Amendment and requested public comment (83 FR 28797). On September 19, 2018, the Secretary of Commerce (Secretary) approved the Gulf For-hire Reporting Amendment under section 304(a)(3) of the Magnuson-Stevens Act. On October 26, 2018, NMFS published a proposed rule for the Gulf For-hire Reporting Amendment and requested public comment through November 26, 2018 (83 FR 54069). On November 20, 2018, NMFS extended the proposed rule comment period through January 9, 2019 (83 FR 58522).

> 85 Fed. Reg. 44005 (July 21, 2020) (to be codified at 50 C.F.R. pt. 622).

50.    On July 21, 2020, the Defendants promulgated the Final Rule implementing the Gulf For-hire Reporting Amendment. *See id.*

51.    The Final Rule was issued under the authority of the NMFS to implement GMFMC and SAFMC's management measures included in the Gulf For-hire Reporting Amendment.  It applies both to the FMPs for the Reef Fish Resources of the Gulf of Mexico ("Reef Fish FMP") and

Coastal Migratory Pelagic ("CMP") Resources of the Gulf of Mexico and Atlantic Region ("CMP FMP").

52.    The Final Rule amends 50 CFR part 622 to require Gulf For-hire vessels (charter boats and headboats) both to have a VMS tracking device relaying and storing information for Defendants at virtually all times and requires each of these small charter boat businesses to electronically record the fish caught by its customers and send it to Defendants within a half hour of docking.  *See id.* at 44017-44021.

53.    All Plaintiffs operate "charter boats" Gulf For-hire vessels and not "headboats" as referred to in the Final Rule.  While headboats had certain reporting requirements before this rule, charter boats did not.  These new VMS-based reporting requirements for charter boats are completely novel to charter boat operators in the Gulf and Southern Atlantic Fisheries.

54.    For both holders of Reef Fish and Pelagic species permits, the Final Rule requires that: The owner or operator of a charter vessel … for which a charter vessel … permit for Gulf reef fish has been issued … and whose vessel is operating as a charter vessel … regardless of fishing location, must submit an electronic fishing report of all fish harvested and discarded, and any other information requested by SRD for each trip with the time period specified in paragraph (b)(2) of this section.  The electronic fishing report must be submitted to the SRD via NMFS approved hardware and software as posted on the NMFS Southeast Region website. 85 Fed. Reg. 44005 (July 21, 2020) (to be codified at 50 C.F.R. § 622.26(b)(1)) (Gulf Reef Fish).  The requirement for Pelagic fish is the same.  85 Fed. Reg. 44005 (July 21, 2020) (to be codified at 50 C.F.R. § 622.374 (b)(1)(i)).  In either case failure to report electronically within 30 minutes of docking revokes the right to fish. *See* 85 Fed. Reg. 44005 (July 21, 2020) (to be codified at 50 C.F.R. § 622.26(b)(4)).

55.    Incredibly, no such VMS hardware or software has been approved.  *See Approved Software and Hardware for the Southeast For-Hire Reporting Program* (last visited Aug. 17, 2020) *available at* https://bit.ly/VMSHardwareandSoftware.

56.    This omission makes a mockery of the cost estimates by the Defendants in addressing comments and issuing the rule purporting to take into account burdens and costs.  Nonetheless, each of these intrusive devices must be installed by a "qualified marine electrician" and be only the type of device approved by Defendants.  *See, e.g.,* 85 Fed. Reg. 44005 (July 21, 2020) (to be codified at 50 C.F.R. § 622.26(b)(ii)(E)).

57.    Under the Final Rule, charter boats fishing either Gulf Reef Fish or Gulf Pelagic species, are required to "permanently affix[]" "either a cellular or satellite VMS unit" and that unit must have "uninterrupted operation."  85 Fed. Reg. 44005 (July 21, 2020) (to be codified at 50 C.F.R. § 622.25(b)(5); 622.374(b)(5)(ii)).  This unit must allow Defendants knowledge of the vessels whereabouts (with exceptions not applicable here) 24 hours a day, 365 days a year.  85 Fed. Reg. 44005 (July 21, 2020) (to be codified at 50 C.F.R. § 622.26(b)(5)(ii)(B); 622.374(b)(5)(iv)(B)).  The only difference while in port is that it must broadcast its position once every 4 hours rather than every hour within the 24-hour day.

58.    To add to this 24-hour surveillance, more appropriate to a SuperMax prison than the open ocean, each vessel owner must contact the NMFS whenever the vessel leaves port *solely because they have a permit and completely divorced from whether they are acting as a charter vessel*.  85 Fed. Reg. 44005 (July 21, 2020) (to be codified at 50 C.F.R. § 622.26(b)(6); 622.374(b)(6)).  Having to tell the government where you are going and what you are doing when you are not performing a federally permitted task, and  paying for the "privilege" of being tracked by the government for no legitimate government purpose, amount to an improper burden and wholly unlawful harassment.

59.    The Final Rule creates a regime of pervasive 24-hour electronic monitoring of individuals whether or not they are using a federal permit in any way.  It imposes technological and reporting requirements on small businesses and individuals that far outweigh any benefit to fish stocks in the Gulf of Mexico and, in fact, no such benefit is likely or demonstrated.

60.    The Final Rule also allows the Defendants to acquire proprietary information, including prime fishing "holes" that many Plaintiffs have spent years on the sea developing, and grants no protection to that proprietary information.  Divulging such information has no additional value for the legitimate purposes of the Defendants but can greatly harm plaintiffs.

61.    The Defendants estimates of costs of this questionable program are up to 3.4% of each vessel's net revenue, and may include monthly upkeep costs, that were not considered by the Defendants.  Yet there is zero evidence that written logs and weekly reporting of fish reports countersigned by the charter boat customers are insufficient for the government's purposes.  Moreover, other methods of recording and reporting are less intrusive or burdensome than the Final Rule. The Final Rule does not serve Defendants' legitimate purposes better than or as well as other methods available or even in use in other fisheries.

### The Regulatory Landscape of Federally Permitted For-hire Vessels in the Gulf of Mexico

62.    Federally permitted charter vessels subject to the Final Rule are for-hire vessels that take customers out to sea for fishing in the Gulf of Mexico for either Reef Fish or Pelagic species.

63.    Fish harvesting is regulated by NOAA and subject to seasonal closures and quotas. *See Fishing Regulations and Seasonal Closures - Gulf of Mexico* (last visited Aug. 17, 2020) *available at* https://www.fisheries.noaa.gov/fishing-regulations-and-seasonal-closures-gulf-mexico.

64.    On information and belief, charter boats, like the vessels owned and operated by Plaintiffs, catch less fish of all kinds than either commercial fishing fleets or the mostly unregulated private non-commercial boats that only fish recreationally.

65.    On information and belief, commercial fishing boats are heavily regulated because they take in an enormous amount of fish per trip and are equipped with specialized equipment to do so. They are also subject to quotas on how many fish they take.

66.    On information and belief, private recreational fishing in the Gulf of Mexico collectively takes far more fish than charter boats but, except for the aforementioned catch limits and seasonal limits, is almost wholly unregulated.

67.    There is no evidence or even allegation that charter boats and those who operate them are breaking existing rules or violating the law so as to require fitting them all with the regulatory equivalent of an "ankle bracelet" to go about their business, or even to go about their owners' personal lives.

68.    The failure to protect information gathered administratively from being seen and used by law enforcement entities, which otherwise could only obtain such information by warrant or other constitutional means, violates the Plaintiffs' constitutional rights.

69.    The necessity to report catches electronically within a half hour of docking is completely outside any legitimate interest of the Defendants.  Unlike commercial fishing vessels charter boats do not have "catch limits."

70.    On information and belief, the Defendants issued the Final Rule and obtained acquiescence from certain portions of the fishing community by granting special treatment of certain vessels or permit-types, for instance, extending fishing days in the Northern Gulf of Mexico.

71.    There is no information available on what the cost of the equipment will be, whether or not there will be multiple providers of such equipment or whether the Defendants are essentially granting a monopoly. *See Approved Software and Hardware for the Southeast For-Hire Reporting Program* (last visited Aug. 17, 2020) *available at* https://bit.ly/VMSHardwareandSoftware.

72.   The current pandemic has reduced the demand for and operation of charter boats.   No provision has been made for the downturn occurring precisely when an expensive, intrusive and burdensome program is being implemented on charter boats which, heretofore, did not have to report their location or catch in any way.

## CLAIMS FOR RELIEF

### COUNT ONE
### WARRANTLESS GPS SURVEILLANCE VIA THE VMS IS UNCONSTITUTIONAL

73.   Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1-72, as if fully set forth herein.

74.   Under the Constitution, this Court is authorized to set aside laws, rules, regulations, and executive actions that are unconstitutional and in violation of the constitutionally guaranteed rights of the citizens of the United States.

75.   Under the MSA, and in accordance with the APA, this Court is authorized to hold unlawful and set aside agency action, findings, and conclusions that it finds to be arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law, 5 U.S.C. § 706(2)(A); contrary to constitutional right, power, privilege, or immunity, 5 U.S.C. § 706(2)(B); in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, 5 U.S.C. § 706(2)(C); or without observance of procedure required by law, 5 U.S.C. § 706(2)(D). *See* 16 U.S.C. § 1855(f)(1).

76.   On July 21, 2020, Defendants promulgated the Final Rule implementing the Gulf For-hire Reporting Amendment, 85 Fed. Reg. 44005 (July 21, 2020) (to be codified at 50 C.F.R. pt. 622).

77.    Under the MSA and APA, that act is a final agency action subject to judicial review. 16 U.S.C. § 1855(f)(1); 5 U.S.C. § 704.

78.   The Final Rule violates the Constitution and applicable laws.

79.   Mandating 24-hour surveillance of Plaintiffs continuously for no just statutory cause, especially when Plaintiffs must also notify the Defendants of *any* vessel operation—including vessel

use for purely private non-regulated activities—is arbitrary, capricious, an abuse of discretion, not otherwise in accordance with law, contrary to right, power, privilege, or immunity; and in excess of statutory jurisdiction, authority, right or limitations.

80. By doing so, Defendants exercise unbridled administrative and executive discretion contrary to Congressional design and statutory language.

81. The Final Rule violates Plaintiffs' constitutional right to privacy by transmitting and archiving locations when the vessels are used both for for-hire fishing and purely private and non-regulated purposes such as swimming, sunbathing, and sailing and even when situated in private property shielded from the public eye.

82. It violates Plaintiffs' right to travel, as each plaintiff will not only be monitored when traveling but must call the Government and tell them where they are going and why.

83. The Final Rule gives Defendants the authority to conduct an unconstitutional and unlawful 24-hour GPS surveillance via VMS, which is a warrantless or unreasonable search violating the Fourth Amendment and the Ninth Amendment rights including the right to privacy, freedom of movement, free enterprise, freedom from unreasonable governmental interference and the right to travel.

84. In addition, if the data demanded is created by a device bought and paid for by Plaintiffs it belongs to them and the seizure of such data without any cause at all, never mind probable, of that data by Defendants violates the due process clause of the Fifth Amendment to the U.S. Constitution.

85. By empowering themselves to conduct a warrantless search, the Defendants committed an *ultra vires* violation repugnant to the Constitution and in excess of any statutory authority grantable or granted by Congress.

86.    Defendants lack the authority to require such complete panopticon-like surveillance of Plaintiffs' activities and to insert a device on Plaintiffs' vessels at their expense.  The Final Rule is void and unenforceable to the extent it provides such a requirement.

## COUNT TWO
### NOAA's VMS Requirement Is Not Authorized by the MSA or Any Other Law, and It Would Exceed Congress' Power If It Were

87.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1-86, as if fully set forth herein.

88.    Administrative agencies have only those powers and related regulatory abilities as provided to them by statute, constitutionally construed. Agency actions founded in statutory construction exceeding the bounds of the Constitution are not powers so provided and are an abuse of discretion.

89.    The MSA purportedly authorizes warrantless access to VMS data by the Coast Guard or other authorized law enforcement. 16 U.S.C. § 1861(b)(1)(A)(vi).  But it does not require a vessel to have such data, and it requires the USCG or other authorized law enforcement to have "reasonable cause to believe" a prohibited act has occurred before seizing such information.  The MSA does not grant powers beyond the constitutional limit.  The proprietary information of each vessel as to vendors and fishing spots used is also a property right and cannot be seized without due process of law.  The MSA does not authorize the USCG, or other agencies, warrantless 24-hour GPS surveillance, requiring no judicial authorization of any kind, because it violates the Fourth, Fifth, and Ninth Amendments of the U.S. Constitution.

90.    The Final Rule will harm the Plaintiffs by violating their constitutional right to be free from unreasonable searches and seizures, their right to due process of law and their rights to privacy, free enterprise, to be free from unreasonable governmental interference, and by chilling their freedom of movement, the right to travel.

COUNT THREE

THE VMS MANDATE IN THE GULF FOR-HIRE REPORTING AMENDMENT DOES NOT ACHIEVE
THE STATUTORY OBJECTIVE AND STANDARDS OF THE MSA AND APA

91.   Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1-90, as if fully set forth here.

92.   To the harm of Plaintiffs, there is an improper match up of means (the Final Rule) with the goals of the MSA. Namely, the VMS requirement does not protect, conserve, grow, or help manage the United States' fishery resources; it is not implemented with the goal of continually achieving and maintaining optimum yield of fish but only surveils the location and movement of a select group of Gulf For-hire vessels that do not harvest as many fish as many other unregulated fishers, 24 hours a day, and regardless of whether they are engaging in NMFS-regulated activities.

93.   There is no relation between the Gulf For-hire Reporting Amendment and the Final Rule's VMS mandate and the MSA's goals. Laws, rules, regulations, executive and agency actions that encroach on constitutional rights must have a relation to the goal of the statute cited, or they are unlawful.

94.   The VMS greatly burdens the Plaintiffs, violating the MSA's National Standards.

95.   NMFS's GPS surveillance via VMS gathers Plaintiffs' proprietary business information including their fishing "spots," which, if divulged, may negatively affect Plaintiffs' businesses.

96.   Industry-funding of the VMS adds unnecessary financial burdens on Plaintiffs and similarly situated charter fishing owners and operators. There are months where charter vessels subjected to the VMS mandate are not used at all, but the owners are likely to still be required to pay the monthly fee for VMS.

97.   The VMS mandate does little or nothing to prevent overfishing, for the vessel location reveals nothing of the number or kind of fish caught in any one trip.

98.    The VMS is a more expensive and more intrusive alternative to a logbook or system for reporting pertinent fishing locations and catches in a trip.

99.    NOAA and NMFS unlawfully discriminated between different fisheries and fishers by inequitably giving greater allocation of fishing privileges to the fisheries in the Charter Fisherman's Association; by paying for the VMS mandate for some charter and commercial vessels in the Northern Gulf of Mexico; and by allowing recreational boats, which catch a greater amount of the same fish caught by the charter boats and headboats, to be unregulated and unmonitored.

**COUNT FOUR**
**INDUSTRY FUNDING VIOLATES THE REGULATORY FLEXIBILITY ACT**

100.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1-99 as if fully set forth herein.

101.    Under the MSA, and in accordance with the APA, this Court is authorized to hold unlawful and set aside agency action, findings, and conclusions that are taken without observance of the procedure required by law. 16 U.S.C. § 1855(f)(1); *cf.* 5 U.S.C. § 706(2)(D).

102.    Plaintiffs are small businesses whose primary industry is charter boat fishing. Their annual gross receipts are far less than or equal to $11 million.  In fact, the Final Rule estimates average revenue per boat at $88,000. They are subject to the Final Rule.

103.    Defendants failed to prepare legally sufficient initial or final regulatory flexibility analyses in violation of the RFA, particularly in the availability of reasonable alternatives using current technology.

104.    Defendants' RFA violation is without observance of procedure required by law and is final agency action that is arbitrary, capricious, and an abuse of discretion in violation of the MSA and the APA.

105.    Given Defendants' violation of the RFA, the Final Rule is void and unenforceable.

COUNT FIVE
CLASS ACTION ALLEGATIONS

106. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1-104, as if fully set forth herein.

107. Plaintiffs and each of them bring this action as representatives of a class pursuant to the Federal Rules of Civil Procedure 23(a) and (b)(2) on behalf of all Gulf For-hire vessel charter boat owners and operators who are permitted to fish by the Fishery Management Councils of the Gulf of Mexico and South Atlantic and are harmed by the Final Rule. *See* 85 Fed. Reg. 44005 (July 21, 2020) (to be codified at 50 C.F.R. pt. 622).

108. For-hire vessel owners and operators would include individuals and companies who operate charter boats and who hold at least one valid Federal charter permit for Gulf Reef fish or Gulf CMP species. This is the class that is affected by and must comply with the Final Rule.

109. The Plaintiffs are adequate representatives of the class because the Plaintiffs belong to the class as owners and operators and companies who hold at least one valid Federal charter permit for Gulf Reef fish or Gulf CMP species.

110. The class includes over 1,000 owners and operators. *See* 85 Fed. Reg. at 44013 (July 21, 2020) (to be codified at 50 C.F.R. pt. 622).

111. The class is so numerous that joinder of all members is impractical. In 2018, there were 1,368 vessels with at least one valid federal charter or headboat permit for Gulf reef fish or Gulf CMP species. *See id.* All of these vessels will be impacted by the Final Rule. *See id.* Since the federal government has records of all these individuals through their permit applications, the class can be identified and adequately notified.

112. The common questions of law and fact that unite the class include, but are not limited to,

    a. whether the warrantless GPS surveillance via the VMS mandate is unconstitutional;

b.    whether the warrantless GPS surveillance via the VMS mandate is unlawful;

c.    whether NOAA's VMS mandate is authorized by the MSA or any other law;

d.    whether the VMS mandate exceeds power granted the federal agency;

e.    whether the industry-funded VMS mandate is authorized by the MSA or any other law;

f.    whether the VMS achieves the statutory objective and standards of the MSA and APA;

g.    whether industry funding of the VMS violates the RFA;

h.    whether monitoring of the individuals and vessels while not performing federally permitted activity violates the Fourth and Ninth Amendments of the U.S. Constitution; and,

i.    whether seizing data and proprietary information without warrant or even reasonable suspicion of wrongdoing violates the Due Process Clause of the Fifth Amendment of the Constitution.

113. The claims brought by the Plaintiffs are typical of the class, and the Plaintiffs' representatives will fairly and adequately protect the interests of the class.

114. The relief sought is appropriate for the class as a whole as the Plaintiffs are seeking declaratory relief finding the Final Rule void and injunctive relief that would enjoin the defendants from enforcing the Final Rule. This relief would equally impact the entire class.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for the following relief against Defendants:

A.    Declaratory judgment that the Gulf-for-hire Reporting Amendment implemented by the Final Rule violates the Fourth, Fifth, and Ninth Amendments of the United States Constitution because warrantless 24-hour GPS surveillance is repugnant to the Constitutionally protected freedom from an unreasonable governmental search and seizure and the protection against

deprivation of property without adequate due process of law, and by interfering with freedom of movement, free enterprise, and right to privacy.

B.     Declaratory judgment that Plaintiffs have a reasonable expectation of privacy from the 24-hour GPS surveillance of their movements out on the sea.

C.     Declaratory judgment that, if paid for by Plaintiffs, the VMS and the data it collects is their property, and that Defendants trespass into Plaintiffs' property without due process of law by forcing Plaintiffs to hand over data.

D.     Declaratory judgment that the sharing of such data and information with law enforcement agencies in order to attain information to use in a potential prosecutorial action is per se in violation of the Fourth Amendment.

E.     Declaratory judgment that the Gulf-for-hire Reporting Amendment implemented by the Final Rule violates the United States Constitution Article I because Congress did not empower the Defendants to conduct warrantless 24-hour GPS surveillance or the forced industry financing of the VMS device that enables that illegal search.

F.     Declaratory judgment holding unlawful and setting aside the Final Rule under the MSA.

G.     Declaratory judgment holding unlawful and setting aside the Gulf-for-hire Reporting Amendment and the Final Rule under the APA.

H.     Declaratory judgment that the Gulf-for-hire Reporting Amendment implemented by the Final Rule is void and unenforceable under the RFA.

I.     Injunctive relief permanently enjoining Defendants from enforcing the Gulf-for-hire Reporting Amendment and the Final Rule and from requiring Plaintiffs to purchase and maintain the VMS or to declare where they are going when they leave port, unless they are going fishing under their government permit.

J.    For an award for all reasonable attorneys' fees and costs incurred herein and that Plaintiffs may be entitled to under law including but not limited to the EAJA; and,

K.    For such other relief as this Court deems just and proper.

Dated:  August 20, 2020                          Respectfully submitted,

**GORDON,  ARATA,  MONTGOMERY, BARNETT, McCOLLAM, DUPLANTIS & EAGAN, LLC**

By: /s/ A. Gregory Grimsal
A. Gregory Grimsal (#06332)
Kristina M. Lagasse (#38310)
201 St. Charles Avenue, 40th Floor
New Orleans, Louisiana 70170-4000
Telephone: (504) 582-1111
Facsimile: (504) 582-1121
Email: ggrimsal@gamb.com
klagasse@gamb.com

/s/
John J. Vecchione
Senior Litigation Counsel
Kara Rollins
Litigation Counsel
*Pro hac vice forthcoming*

New Civil Liberties Alliance
1225 19th Street NW, Suite 450
Washington, DC 20036
Phone: (202) 869-5210
john.vecchione@ncla.legal
kara.rollins@ncla.legal

*Counsel for Plaintiffs*