**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **RIVERS END OUTFITTERS, LLC, et al.** | : | Civil Action No. 2:20-cv-2312 |
| | : | |
| *Plaintiffs*, | : | Section "E" (1) |
| | : | |
| v. | : | Judge Susie Morgan |
| | : | |
| **U.S. DEPARTMENT OF COMMERCE, et al.** | : | Magistrate Judge Janis van Meerveld |
| | : | |
| | : | |
| | : | |
| | : | Motion to Certify Class |
| *Defendant*s. | : | (Oral Argument Requested) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO CERTIFY CLASS**

## I.     INTRODUCTION

The Plaintiffs, Captain Billy Wells and Mexican Gulf Shipping Company ("Mexican Gulf"), Captain Allen Walburn and A&B Charters, Inc. ("A&B"), Captain Kraig Dafcik, Captain Joseph Dobin and Captain Joey D. Charters ("Joey D. Charters"), Captain Frank Ventimiglia and Ventimiglia Charters, and Captain Jim Rinckey and Fishing Charters of Naples ("Fishing Charters"), submit this Memorandum in Support of their motion for certification of a class of Pelagic and Reef Fish permit holders for charter boat fishing in the Gulf of Mexico. Proposed class representatives seek declaratory and injunctive relief against the Defendants, Department of Commerce ("Commerce") by and through the National Oceanic and Atmospheric Administration ("NOAA") and the National Marine Fisheries Service ("NMFS") along with their chief officers (collectively, "Defendants"), from enforcing an unlawful and unconstitutional, industry-funded, warrantless 24-hour Global Positioning System ("GPS") surveillance of location and movement of each vessel via the Vessel Monitoring System ("VMS"), targeting a select group of federally permitted charter boats in the Gulf of Mexico.

The challenged regulation was promulgated through the Gulf of Mexico Fishery Management Council's ("Gulf Council") and the South Atlantic Fishery Management Council's ("South Atlantic Council") Gulf For-hire Reporting Amendment ("Gulf For-hire Reporting Amendment"), *available at* https://bit.ly/GulfForhireAmendment, and the July 21, 2020 Final Rule, *see* 85 Fed. Reg. 44005 (July 21, 2020) (to be codified at 50 C.F.R. pt. 622) ("Final Rule").

The named Plaintiffs are individuals and the companies they own that are affected by the Defendants' proposed Final Rule that would impose unconstitutional and unlawful requirements on all holders of two types of charter boat fishing permits in the Gulf of Mexico, those for Reef and Pelagic fish. Because the regulation is uniform, the injury is uniform. The class is known and knowable because the Defendants issue and keep a record of the permits, which are finite in number. The Class is affected the same way by these regulations, suffers the same injury, and that injury can be prevented by the same declaratory and injunctive relief.

II.   FACTS

A.  The Regulation

The Final Rule was issued under the authority of the National Marine Fisheries Service ("NMFS") to implement the Gulf Council and South Atlantic Council's management measures included in the Gulf For-hire Reporting Amendment. It applies both to the fishery management plans ("FMPs") for the Reef Fish Resources of the Gulf of Mexico ("Reef Fish FMP") and Coastal Migratory Pelagic ("CMP") Resources of the Gulf of Mexico and Atlantic Region ("CMP FMP"). By its terms the Final Rule amends 50 CFR part 622 to require Gulf For-hire vessels (charter boats and headboats) both to have a VMS tracking device relaying and storing information for Defendants at virtually all times and requires each of these small charter boat businesses to electronically record the fish caught by its customers and send the information to Defendants within a half hour of docking. *See id.* at 44017– 21. Headboats are not part of the defined class in this action. All Plaintiffs operate "charter boats"

Gulf For-hire vessels and not "headboats" as referred to in the Final Rule.  These VMS-based reporting requirements for charter boats are completely novel to charter boat operators in the Gulf and Southern Atlantic Fisheries.

By its terms for both holders of Reef Fish and Pelagic species permits, the Final Rule requires that: "The owner or operator of a charter vessel … for which a charter vessel … permit for Gulf reef fish has been issued … and whose vessel is operating as a charter vessel … regardless of fishing location, must submit an electronic fishing report of all fish harvested and discarded, and any other information requested by the SRD for each trip within the time period specified in paragraph (b)(2) of this section." *Id.* at 44017 (to be codified at 50 C.F.R. § 622.26).  The electronic fishing report must be submitted to the SRD via NMFS-approved hardware and software as posted on the NMFS Southeast Region website. *Id.* at 44005–06 (to be codified at 50 C.F.R. § 622.26(b)(1)) (Gulf Reef Fish).  The requirement for Pelagic fish is the same.  *Id.* at 44005 (to be codified at 50 C.F.R. § 622.374 (b)(1)(i)).  In either case, failure to report electronically within 30 minutes of docking revokes the right to fish.  *See id.* at 44006 (to be codified at 50 C.F.R. § 622.26(b)(4)).

Defendants have not yet approved any hardware or software. Nonetheless, each of these intrusive devices must be installed by a "qualified marine electrician" and be only the type of device approved by Defendants. *See, e.g., id.* at 44018 (to be codified at 50 C.F.R. § 622.26(b)(5)(ii)(E)).  Under the Final Rule, charter boats fishing either Gulf Reef Fish or Gulf Pelagic species, are required to "permanently affix[]" "either a cellular or satellite VMS unit" and that unit must have "uninterrupted operation."  *Id.* at 44018, 44020 (to be codified at 50 C.F.R. § 622.25(b)(5); 622.374(b)(5)(ii)).  This unit must allow Defendants knowledge of the vessel's whereabouts (with exceptions not applicable here) 24 hours a day, 365 days a year.  *Id.* at 44018, 44020 (to be codified at 50 C.F.R. § 622.26(b)(5)(ii)(B); 622.374(b)(5)(iv)(B)).  The only difference while in port is that it must broadcast its position once

every 4 hours rather than every hour within the 24-hour day. *Id.* at 44018, 44020 (to be codified at 50 C.F.R. § 622.26(b)(5)(ii)(C); 622.374(b)(5)(iv)(C)).

But this is not all. On top of 24-hour surveillance, each vessel owner must contact the NMFS whenever the vessel leaves port *solely because they have a permit and completely divorced from whether they are acting as a charter vessel. Id.* at 44019, 44021 (to be codified at 50 C.F.R. § 622.26(b)(6); 622.374(b)(6)). The Final Rule creates a regime of pervasive, 24-hour electronic monitoring of individuals whether or not they are using a federal permit in any way. In addition, Defendants are imposing technological and reporting requirements on each permit holder, many of whom are small businesses and individuals, that far outweigh any benefit to fish stocks in the Gulf of Mexico. In fact, no such benefit is demonstrated or even likely.

 This surveillance has obvious corollary harms.

All of this surveillance under the Final Rule allows the Defendants to acquire proprietary information, including prime fishing "holes" that many Plaintiffs and Gulf fisherman have spent years on the sea developing, and it grants no protection to that proprietary information. Divulging such information has no additional value for the legitimate purposes of the Defendants but can greatly harm plaintiffs. Further, while the costs are unknown, they are considerable and will be imposed on all members of the class. The Defendants estimate costs of this questionable program to be up to 3.4% of each vessel's net revenue. Further, there may be monthly upkeep costs that were not considered by the Defendants. These harms: 1) 24-hour surveillance of each vessel whether fishing or not; 2) a requirement to contact the Defendants whenever a vessel leaves the dock; 3) forced purchase of surveillance, transmission and storage devices to record fish catches, affect all proposed class representatives and each member of the class as well as affect all permit holders.

B. <u>The Proposed Class and the Requested Relief</u>

1. <u>The Proposed Class and Allegations</u>

The Complaint in this matter has four counts prior to the class count. Each one of these claims identifies a uniform harm and violation of rights. Count I alleges violations of the Constitution including the Fourth, Fifth, and Ninth Amendments and failures to comply with the Magnuson-Stevens Act ("MSA") and standards set by the APA and identifies constitutional rights violated by permanent surveillance including the right to privacy. See Complaint ¶¶ 27–32 and 73–86. Count II alleges that all of these actions by Defendants are not authorized by law and exceed Congressional power if they were purported to be so authorized. Complaint ¶¶ 87–90. Count III alleges a failure to comply with the Magnuson-Stevens Act and that the Final Rule does not fulfill the statutory purpose. Complaint ¶¶ 91–98. Count IV alleges violations of the Regulatory Flexibility Act ("RFA") ¶¶ 100–105.

The Class allegations of Count V and the requested relief are the chief allegations that concern this motion, however. The proposed class is the "Gulf For-hire vessel charter boat owners and operators who are permitted to fish by the Fishery Management Councils of the Gulf of Mexico and South Atlantic and are harmed by the Final Rule." Complaint ¶ 7. It includes individuals and companies who hold "at least one valid Federal charter permit for Gulf Reef fish or Gulf CMP (Pelagic) species." Complaint ¶ 108. The class is easily identified because The Final Rule identifies them, and Defendants have their identities. The Federal Register splits out headboats and charter boats and states "As a result, the estimated 1,368 for-hire vessels that will be affected by this final rule are expected to consist of *approximately 1,298 charter vessels* and 70 headboats." *Id.* at 44013–14 (emphasis added). This number is the "over 1000" members of the class identified by the Complaint. *Id.* ¶ 110 (*and see* Complaint ¶ 111 "Since the federal government has records of all these individuals through their permit applications, the class can be identified and adequately notified.").[1]

---

[1] The Administrative Record was just lodged before this motion was due under local rule and could not be reviewed for this motion but, even if not produced, discovery can obtain the information from Defendants.

The common questions of law and fact that overwhelmingly predominate in this action are laid out in the Complaint at paragraph 112. They include:

    a.   whether the warrantless GPS surveillance via the VMS mandate is unconstitutional;

    b.   whether the warrantless GPS surveillance via the VMS mandate is unlawful;

    c.   whether NOAA's VMS mandate is authorized by the MSA or any other law;

    d.   whether the VMS mandate exceeds power granted the federal agency;

    e.   whether the industry-funded VMS mandate is authorized by the MSA or any other law;

    f.   whether the VMS achieves the statutory objective and standards of the MSA and APA;

    g.   whether industry funding of the VMS violates the RFA;

    h.   whether monitoring of the individuals and vessels while not performing federally permitted activity violates the Fourth and Ninth Amendments [2] of the U.S. Constitution; and,

    i.   whether seizing data and proprietary information without warrant or even reasonable suspicion of wrongdoing violates the Due Process Clause of the Fifth Amendment of the Constitution.

    2.   <u>The Requested Relief Is Declaratory and Injunctive.</u>

The requested relief in this action is almost completely declaratory and injunctive. The Prayer for Relief requests:

- Declaratory judgment that the Gulf-For-hire Reporting Amendment implemented by the Final Rule violates the Fourth, Fifth, and Ninth Amendments of the United States Constitution because warrantless 24-hour GPS surveillance is repugnant to the Constitutionally-protected

---

[2] The Complaint also notes that it violates the 5th Amendment of the Constitution and requests relief on that ground which is also a common question of law.

freedom from an unreasonable governmental search and seizure, protection against deprivation of property without adequate due process of law, and by interfering with freedom of movement, free enterprise, and right to privacy.

- Declaratory judgment that Plaintiffs have a reasonable expectation of privacy from the warrantless 24-hour GPS surveillance of their movements out on the sea.

- Declaratory judgment that, if paid for by Plaintiffs, the VMS and the data it collects is their property, and that Defendants trespass into Plaintiffs' property without due process of law by forcing Plaintiffs to hand over data.

- Declaratory judgment that the sharing of such data and information with law enforcement agencies in order to attain information to use in a potential prosecutorial action is per se in violation of the Fourth Amendments. [3]

- Declaratory judgment that the Gulf-For-hire Reporting Amendment implemented by the Final Rule violates the United States Constitution Article I because Congress did not empower the Defendants to conduct warrantless 24-hour GPS surveillance or to force industry financing of the VMS device that enables that illegal search.

- Declaratory judgment holding unlawful and setting aside the Final Rule under the MSA.

- Declaratory judgment holding unlawful and setting aside the Gulf-For-hire Reporting Amendment and the Final Rule under the APA.

- Declaratory judgment that the Gulf-For-hire Reporting Amendment implemented by the Final Rule is void and unenforceable under the RFA.

---

[3] Once again, this also violates the 5th Amendment and a request for similar relief under that amendment is both injunctive and common to all Plaintiffs.

- Injunctive relief permanently enjoining Defendants from enforcing the Gulf-For-hire Reporting Amendment and the Final Rule; from requiring Plaintiffs to purchase and maintain the VMS; and from requiring Plaintiffs to declare where they are going when they leave port, unless they are going fishing under their government permit.

- For an award for all reasonable attorneys' fees and costs incurred herein and that Plaintiffs may be entitled to under law including but not limited to the EAJA; and,

- For such other relief as this Court deems just and proper.

That is the entirety of the relief requested. A declaration and injunction to prohibit constant surveillance and monitoring of the class and, further, to prevent equipment to be placed on Plaintiffs' vessels against their will. The only arguably "monetary damages" are for reasonable attorneys' fees under the EAJA or other applicable law and "such other relief" as the Court may deem just and proper. Even if the declaration or injunction is modified as the dispute of the parties is crystallized, it remains a request for injunction and declaratory action and not a complaint for damages.

C.  The Proposed Class Representatives

The proposed class representatives in this action are all owners and operators of charter boat Gulf-For-hire boats that have Reef and Pelagic Fish licenses from the government and qualify as small businesses. Each representative is very concerned about the violations of the Constitution, personal privacy, costs, expenses and intrusiveness of this rule. They have each put in Declarations expressing their desire to represent the class and explaining their concerns about this government overreach.

1.  Captain Billy Wells and Mexican Gulf

Captain Wells is a resident of Louisiana and part owner of Plaintiff Mexican Gulf Fishing Company. Declaration of Captain Billy Wells ¶¶ 1–2. ("Wells Dec.") attached hereto as Exhibit A. Mexican Gulf is a limited liability company operating under the laws of Louisiana and operating from Venice, Louisiana. *Id.* at ¶ 2. It charters fishing trips on a 42' Catamaran, *Wild Bill,* which can carry

up to six passengers. *Id.* He and his company hold both Reef Fish and Pelagic permits, and he captains the *Wild Bill* on chartered fishing trips. *Id.* ¶ 3. Like most charter boat captains, he uses the vessel for non-fishing trips. *Id.* ¶ 4. He opposes the Final Rule because it will allow the government to track him whenever he is on the vessel and will jeopardize proprietary information. *Id.* He is also concerned that there is no known prohibition on sharing the vast amount of data gathered with other agencies, law enforcement or anyone else. *Id.* He is apprehensive about having to purchase and maintain the government's spying paraphernalia and of having to call the government when he leaves the dock for any reason. *Id.* ¶ 5. He has been a charter boat captain for more than 15 years and, based on his experience, believes his is typical of the types of charter businesses operating in the Gulf of Mexico. *Id.* ¶ 6. He is ready and willing to be a class representative and to help direct the litigation to stop this unconstitutional rule that injures not only him but all other permit holders in the same way. *Id.* ¶¶ 7–8.

### 2. Captain Allen Walburn and A&B Charters

Captain Walburn owns and operates A&B Charters and is a resident of Florida. Declaration of Allen Walburn ("Walburn Dec.") ¶ 1 attached hereto as Exhibit B. This small charter fishing company, which he founded forty-one years ago in Naples, Florida, is a nearly lifelong project for him. *Id.* ¶ 3. He owns and operates three commercial charter vessels through A&B Charters, the *A&B*, *Alabama* and *All-In*. *Id.* Those vessels are permitted to take up to ten passengers each and have permits for Reef Fish and Pelagic. A&B Charters offers customers inshore fishing in Naples, sportfishing, and deep-sea fishing. Customers may also charter the vessels for purposes of sightseeing, swimming or other pastimes in conjunction with fishing. *Id.* ¶ 3. Like the other plaintiffs in this action, Captain Walburn uses his vessels to take family and friends to dinner or for other non-fishing activities, and he, like the others, doesn't want to be tracked, to call the government every time he leaves the dock whether fishing or not, purchase expensive monitoring equipment, or have his

information shared with every other agency and department, all without a warrant. *Id.* ¶¶ 4–5. Captain Walburn also operates in other fisheries, particularly Alaska, and has seen and can comment on the monitoring of fish stocks there by charter boats. *Id.* ¶ 6. He has been a commentator and correspondent with certain Defendants since this rule was proposed. *Id.* ¶ 7. He notes these boats are not large and that the permit holders are all affected the same way under the rules. *Id.* He sought out NCLA to represent him and his company in a challenge to these regulations. *Id.* at 9. He is knowledgeable about all aspects of charter fishing in the Gulf of Mexico and wants "to use that knowledge to represent the class of Americans, primarily charter boat owners and operators with Reef and Pelagic permits operating in the Gulf in this lawsuit." *Id.* at ¶ 8. He is adamant that no American should be tracked all the time simply because they have a federal permit, and he is willing to fight this regulation for himself and for others. *Id.* at 10–11.

     3. <u>Captain Kraig Dafcik</u>

Captain Dafcik is also a resident of Florida and part owner of A&B Charters vessel *Alabama*, which he operates out of Port O Call Way, Naples, Florida. Declaration of Kraig Dafcik ¶¶ 1–2 Declaration of Kraig Dafcik ("Dafcik Dec.") attached hereto as Exhibit C. He charters trips off-shore for Pelagic and migratory fish species and uses the *Alabama* on private non-fishing trips with his wife and family. *Id.* ¶ 3. He opposes, like all plaintiffs, the intrusions into his privacy of 24-hour monitoring, having to call the government when he leaves the dock, sharing his carefully built up knowledge of the Gulf and the use of this information by any agency or government body whatsoever. *Id.* ¶¶ 4–6. He joined the suit because he is a typical small charter operator and wants to represent his interest and those of the class to oppose these unconstitutional impositions, because he does not want them inflicted on anybody. *Id.* ¶¶ 7–9.

4. <u>Captain Joey Dobin and Joey D. Charters</u>

Captain Dobin is a resident of Florida and operates Joey D. Charters from Naples, Florida. Declaration of Captain Joey Dobin ("Dobin Dec.") ¶¶ 1–2 attached hereto as Exhibit D. He founded the company almost 20 years ago and has four vessels including the *Still Dreamin,* which is permitted for commercial use and has Reef Fish and Pelagic permits. *Id.* ¶ 3. Like the other plaintiffs Captain Dobin and his company offer fishing charters for inshore and deep-sea fishing. Customers can also rent a vessel for fishing and non-fishing purposes like sightseeing. *Id.* at ¶ 4. Captain Dobin uses the *Still Dreamin* for commercial and non-commercial purposes. He is worried about the compliance costs for the forced surveillance equipment. *Id.* at 5. But that is not all. It is not simply the cost but the intrusiveness of this regulation that affects him and all other charter fishermen in the Gulf, including being tracked whether they are fishing or not. *Id.* ¶ 6. Captain Dobin believes it is outrageous he has to call the government whenever he leaves the dock and tell them what he is doing in addition to the loss of privacy and proprietary information this all entails. *Id.* at 7. As he says "we are all in the same boat as far as the effects" the regulation will have on him and others similarly situated, so he is willing and able to be a class representative along with his company. *Id.* ¶¶ 8–9.

5. <u>Captain Frank Ventimiglia and Ventimiglia, LLC</u>

Plaintiff Captain Ventimiglia is a resident of Florida operating the charter boat company Ventimiglia LLC out of Fort Myers, Florida. Declaration of Captain Frank Ventimiglia ("Ventimiglia Dec.") ¶¶ 1–2 attached hereto as Exhibit E. Captain Ventimiglia operates a 29-foot vessel *Miss Hayden,* which is permitted to take up to six passengers and runs inshore, off-shore and bay fishing off the southwest shores of Florida. *Id.* ¶ 3. He founded the company 20 years ago and has both Reef Fish and Pelagic permits. *Id.* ¶¶ 3–4. Like most charter captains, he uses the *Miss Hayden* (named after his niece) for voyages other than permitted fishing. He, like the other plaintiffs and other permit holders, will have to buy government required equipment and have his movement tracked whether fishing or

not.  *Id.* ¶ 5.  Twenty years of proprietary information will go to the government if the rules are implemented, and all of this information can be shared with other government entities.  *Id.* ¶ 6. Captain Ventimiglia "[a]lso resent[s] in the extreme having to call the government every time [he] leave[s] the dock and tell them what [he's] doing for no good reason."  *Id.* ¶ 7.  He is a typical Gulf charter fisherman and is willing and able to adequately represent the class.

6.  Captain Jim Rinckey and Fishing Charters of Naples

Captain Rinckey is a resident of Florida and captains the *All-In* through Fishing Charters. Declaration of Jim Rinckey ("Rinckey Dec.")  ¶¶ 1–2 Declaration of Jim Rinckey attached hereto as Exhibit F.  He has been in the business for six years, and the *All-In* is permitted for 19 passengers and two crew and has Reef Fish and Pelagic permits.  *Id.* ¶¶ 2–3.  He captains the *All-In* and also uses it for personal use and non-fishing trips.  *Id.* ¶ 4.  Like the other plaintiffs, he is concerned his own movements are tracked whenever he is on the vessel, his proprietary business information is obtained and shared with other government agencies and he will have to buy and maintain the very surveillance devices he opposes.  *Id.* ¶¶ 5–7.  He joined the suit not only for himself but for others similarly situated and is willing to use his knowledge to help direct the suit.  *Id.* ¶¶ 8–9.  He is typical of charter boat captains in the Gulf and wants to be a class representative to prevent anyone from having to tell the Government his or her whereabouts on leaving the dock and from being constantly monitored.  *Id.* ¶ 10.

D.  The Proposed Class Counsel

The Proposed Class Counsel in this matter, the New Civil Liberties Alliance ("NCLA"), and its counsel here, John J. Vecchione and Kara Rollins, have the requisite experience and capabilities to serve as class counsel in this matter.  *See* Declaration of John J. Vecchione, Esq. ("Vecchione Dec.") attached hereto as Exhibit G.

NCLA is "a nonpartisan, nonprofit civil rights organization and public-interest law firm founded to challenge multiple constitutional defects in the modern administrative state through original litigation, *amicus curiae* briefs, and other means." Vecchione Dec. ¶ 3. It was founded by Philip Hamburger, a noted law professor at Columbia University Law School and the author of *Is Administrative Law Unlawful?* (Chicago, 2014). *Id.* ¶ 4. NCLA defends civil liberties primarily by asserting constitutional constraints on agency power which it believes exceeds the bounds of our Constitution. *Id.* at 5. Its Board of Advisors is chaired by a retired judge of the U.S. Court of Appeals for the D.C. Circuit, Janice Rogers Brown, and includes among others, former Commissioner of the U.S. Commission on Civil Rights Jennifer Braceras. NCLA has represented individuals in complex administrative matters all over the country. *See* Complaint, Mas Canosa v. City of Coral Gables, 2018-33927-CA-01 (06) (filed Oct. 5, 2018), *available at* https://nclalegal.org/wp-content/uploads/2018/10/Raul-Mas-Canosa-vs.-City-of-Coral-Gables-Florida-Complaint.pdf; *see also* Complaint, Ranchers Cattleman Action Legal Fund United Stockgrowers of America v. United States Dep't of Agriculture, 1:19-cv-00205-NDF (D. Wyo.) (filed Oct. 3, 2019), ECF No. 1.

NCLA's attorneys appearing in this matter as proposed class counsel are John J. Vecchione, Senior Litigation Counsel and Kara Rollins, Litigation Counsel. Mr. Vecchione has been before the Bar of New York for thirty years and is a member of the bars of the District of Columbia, the Commonwealth of Virginia and the Supreme Court of the United States. *Id.* ¶ 9. He is also admitted to the 5th Circuit. *Id.* He graduated with honors from Georgetown University Law School and clerked for a federal district court judge in the Federal District of New Jersey. *Id.* ¶ 9. He has extensive trial and appellate experience, including at least a dozen complex civil trials of three weeks or more, and has taken cases from initial Complaint to Petitions for *Certiorari* to the Supreme Court of the United States. *Id.* ¶ 11. He has extensive mass tort experience having filed cases in at least two MDL's and been a member of the Plaintiffs' Steering Committee ("PSC") of an MDL for over ten years from its inception to its

wind up.  *Id.* ¶ 12; *see also In re Aredia Zometa Products Liability Litigation,* No. 3-06-1760, 2011 WL 2182824 *2 (identifying members of the PSC and describing activities in the litigation to that time.  In that case a motion for class certification was made but denied.  *Id.* at *4.  Mr. Vecchione has been counsel in well over one-hundred reported decisions in the official federal reporters and Westlaw since the 1990's.

Mr. Vecchione has been pressing public-interest litigation since 2016 as Vice President and then President and CEO of Cause of Action Institute, and now with NCLA as a Senior Litigation Counsel. *Id.* ¶ 13.  In both nonprofit entities, as here, he directed litigation or represented fisher clients *pro bono* against the Department of Commerce and NOAA.  *Id.* ¶ 14: *and see Goethal v. U.S. Dept. of Commerce,* 845 F.3d 106 (1st Cir., 2017) (CoA); *Relentless Inc. et al v. U.S. Department of Commerce et al.*, 1:20-cv-00108 2020 WL 5016923 (D.R.I.) (denying motion to transfer-Mr. Vecchione and Ms. Rollins appearing for prevailing plaintiffs).  He has represented other clients *pro bono* against the federal government in many cases.  *Id.* ¶ 15; *see, e.g., Judicial Watch, Inc. v. Kerry*, 844 F.3d 952 (2016); *Limnia, Inc. v. United States Dept. of Energy*, 857 F.3d 379 (2017); *Federal Trade Commission v. D-Link Systems, Inc.*, No. 17-cv-00039 2018 WL 604192 (N.D. Cal.).  Mr. Vecchione procured the *pro bono* services of local counsel Gordon, Arata, Montgomery, Barnett, McCollam, Duplantis & Eagan, LLC, and its attorneys, A. Gregory Grimsal and Kristina M. Lagasse who have made an appearance in this case to sponsor counsels' admission. *Id.* ¶ 16.  He investigated this case not only by contacts with the named plaintiffs but other fishermen in the Gulf of Mexico.  *Id.* ¶ 17.

Ms. Rollins graduated with honors from Catholic University of America's Columbus School of Law in 2014 and then clerked for the Superior Court of New Jersey, Union Vicinage.  *Id.* ¶ 18.  Since completing her clerkship in 2015, she has focused her practice on administrative law both at NCLA and CoA.  *Id.* ¶ 19.  She has appeared as associate counsel in complex litigation against administrative agencies and tried a case from filing to end of post-trial motions against the government.  *Id.* ¶ 21; *and*

*see FTC v. Vylah Tec, LLC et al.*, 2:17-cv-228, 2019 WL 8348951 (M.D. Fla.); *Federal Trade Commission v. D-Link Systems, Inc.,* No. 17-cv-00039 2018 WL 604192 (N.D. Cal.).

### III. ARGUMENT

The standard for granting a motion to certify a class requires the Court to find four prerequisites. First that the class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23 (a)(1). Second, that there are common questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Third, in this case, that the claims of the representative parties are typical of the represented class. Fed. R. Civ. P. 23 (a)(3). Finally, the last prong is that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4).

If all of these prerequisites are met, a class action can be maintained if any of the following conditions is met. First, that an individual member's prosecution of the claim would create a risk of incompatible standards of conduct for the party opposing the class. Fed. R. Civ. P. 23(b)(1). Second, that adjudications with respect to individual class members "as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;" Fed. R. Civ. P. 23(b)(1)(B) .

The Court can also certify a class if "the Party opposing the class has acted … on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Court can also certify a class if it finds a common question of law or fact "predominate[s] over any questions affecting only individual members, and that a class action is superior to other available methods …" Fed. R. Civ. P. 23(b)(3). Here, the Court is presented by the Complaint primarily with a facial challenge to the Final Rule and a request for injunctive and declaratory relief under Rule 23(b)(2). While the facts of this case would call for approval of a class action under virtually all of the options of Rule 23(b), the

predominance of a facial challenge to an agency rule makes it most appropriate to analyze under that rubric.

A.  Prerequisites Under Rule 23(a)

Courts in the Fifth Circuit analyze the four prerequisites under Rule 23(a) as 1) Numerosity (are there sufficient members of the class); 2) commonality of issues; 3) typicality of the class representatives' claims in relation to the class; and 4) adequacy of the class representatives and their counsel to represent the class.  *In re Monumental Life Ins. Co.,* 365 F.3d 408, 414–15 (5th Cir. 2004); *Abboud v. Agentra, LLC*, No. 3:19-cv-00120, 2020 WL 5526557, at *2 (N.D. Tex. Sept. 14, 2020).  The decision is left to the sound discretion of the district court judge.  *Horton v. Goose Creek Independent School Dist.*, 690 F.2d 470, 483 (5th Cir. 1982).  In this case under clear precedent in this jurisdiction, all of the prerequisites are met.

1.  Numerosity

The Fifth Circuit has suggested that any number of class members over 40 makes joinder difficult if not impracticable.  *Mullin v. Treasure Chest Casino,* 186 F.3d 620, 624 (5th Cir. 1999) (and approving a class of 100 to 150).  That same case cited *Boykin v. Georgia Pacific Corp.*, 706 F.2d 1384, 1386 (5th Cir. 1983), for the proposition that 20 members might be too small but 317 members met the numerosity standard.  Here, as noted in the facts section the class is identified as over 1000.  Specifically, the Federal Register splits out headboats and charter boats and states "As a result the estimated 1,368 for-hire vessels that will be affected by this final rule are expected to consist of *approximately 1,298 charter vessels* and 70 headboats. 85 Fed. Reg. 4405, 44013–14 (emphasis added).  The class is at least 1,298 and easily meets the numerosity requirement.  And these charter boats are spread from Florida to Texas.  Joinder is impracticable under all precedent and the first prerequisite is met.  *Cf. Mertz v. Harris*, 497 F. Supp. 1134, 1138 (S.D. Tex. 1980) (even when exact number of class is unknown but large and widely scattered, numerosity prong met).

2. <u>Commonality</u>

Under applicable precedent there is no disputing the commonality prong.  This is a facial attack on the lawfulness and constitutionality of an agency regulation that asserts the right by the agency to surveil the whereabouts and movements of any charter fishing boat business or individual that has two types of permits in the Gulf of Mexico whether they are fishing or not.  This brief and the Complaint detail nine common issues of law and fact that dominate this litigation.  Complaint ¶ 112 (a-i).  The Final Rule is a common fact in and of itself.  It is a uniform regulation requiring uniform behavior for all permit holders.  Plaintiffs assert that the requirements to purchase equipment that the Government may then use to monitor their whereabouts, to purchase equipment to electronically send in fish catches that are easily done in other ways, to call the government when leaving the dock for any reason even when not using the fishing permits, and to be monitored by the Government whenever the charter boats are being used for whatever purpose are unlawful and unconstitutional.  They claim violations of Constitutional rights including unreasonable search and seizure and violation of privacy.  Such claims are routinely found to meet the commonality prong of Rule 23(a).  *Horton*, *supra*, 690 F.2d at 484 (School district's use of drug sniffing dogs routinely on students found to present common issues of law and fact).  In that case, the Fifth Circuit remanded the decision not to grant class certification to the district court.  In so doing it found that a policy, not even an adopted regulation as here, raised common questions of law and fact such as whether the dog sniffing the children was a search and if so whether it was unreasonable.  *Id.*; *see also M.D. v. Perry,* 294 F.R.D. 7, 38–39 (S.D. Tex. 2013) (commonality prong met when claims were that policy of over assigning child case workers violated the 14th Amendment of the U.S. Constitution); *Mertz, supra,* 497 F. Supp. at 1138 (commonality met when the only issue was the constitutionality of the Social Security agency's policy).

As these cases demonstrate, constitutional harms almost always meet the commonality prong of Rule 23(a)(2) because the rights violated are common to all Americans, and in this case the Final Rule itself is common to all of the individual plaintiffs and the class members.

### 3. Typicality

All of the proposed class representatives are faced with the typical injury of every member of the class from the Final Rule. Each of them and their companies will suffer the same kind of injury from the Final Rule. They each complain of invasions of privacy from being always monitored by the Government, unreasonably searched by following where they take customers or their friends and relatives for dinner, having to call the government and explain their doings before leaving the dock, and having unreasonable costs imposed upon them. All of them, based on knowledge and experience, believe their businesses are typical of charter boat operators in the Gulf of Mexico. Wells Dec. ¶¶ 4–6; Walburn Dec. ¶¶ 4–7; Dafcik Dec. ¶¶ 3–7; Dobin Dec. ¶¶ 3–7; Ventimiglia Dec. ¶¶ 5–7; Rinckey Dec. ¶¶ 4–7, 10. This easily satisfies the typicality prong of Rule 23(a). When a policy or practice affects all members of the class and the class representatives, the typicality standard of Rule 23(a)(3) is met. *M.D. v. Perry,* 294 F.R.D. at 45 (when all members of the class and the class representatives were affected by the allegedly unconstitutional government practice, typicality prerequisite met). This is particularly so because, like commonality, "the threshold for demonstrating typicality is low." *Colindres v. QuitFlex, Mfg.,* 235 F.R.D. 347, 374 (S.D. Tex. 2006). Just as in *Horton,* 690 F.2d at 484, merely being subject to the alleged unconstitutional government action should satisfy the "typicality prong."

### 4. Adequacy of Representation

The adequacy of representation inquiry takes two forms. First, the adequacy of the class representatives to take an active role in and control the litigation to protect the interests of the absentees. *Horton,* 690 F.2d at 484. And second the zeal and competency of the representatives'

counsel.  *Id.*  In this regard it should be noted that Captain Allen Walburn has been involved with this regulation since before his counsel was aware of it and sought out counsel and redress both by contacting NOAA and subsequently finding counsel.  Walburn Dec. ¶¶ 7–10.  It is worth setting out his Declaration on this issue here:

> 7.  I have been commenting and corresponding with NOAA since I first heard of these regulations and before I found any kind of representation for this suit.  My operations are pretty typical of charter boat operations in the Gulf.  We have three boats, and some have one and a few have more, but these are not huge commercial fishing vessels and we all fish the same permits and have the same rights under them.
>
> 8.  I am very knowledgeable about all aspects of charter fishing in the Gulf and elsewhere in American waters.  I want to use that knowledge to represent the class of Americans, primarily charter boats owners and operators with Reef and Pelagic permits operating in the Gulf of Mexico in this lawsuit.
>
> 9.  I sought out New Civil Liberties Alliance, and have also worked to let charter boat captains know about this suit and their interests and I'm capable and willing to see this litigation through not only for myself but for the class of charter boat owners and operators with these permits.
>
> 10.  I believe no American should have to be tracked all the time just because they have some kind of federal permit and I don't think the Government ought to be piling on unnecessary, unconstitutional, and intrusive costs on any American, not just me, just because they have a permit to fish.
>
> 11.  I am willing and capable of helping to direct this litigation and represent the class of charter boat fishing operations holding the affected permits as I know how this rule will affect us and want to stop it.

Walburn Dec. ¶¶ 7–11.  All of the other representatives have commented similarly, except for contacting NOAA beforehand.    Wells Dec. ¶¶ 7–8; Dafcik Dec. ¶¶ 7–9; Dobin Dec. ¶¶ 8–9; Ventimiglia Dec. ¶ 8; Rinckey Dec. ¶¶ 8–10.  The Court can examine the Complaint and the facts in this motion.  It is self-evident to those knowledgeable concerning the law that the Complaint and the Declarations attached hereto could not have been submitted without the active participation of the named Plaintiffs.  It is clear from those submissions that the outrage over the intrusiveness of this regulation originates with the proposed class representatives, and they are no mere bystanders to the suit.  Further, as their declarations attest, they are willing to direct the litigation and protect the interests of the class.  This suffices.

"The basic elements of [adequate representation] are the absence of conflict between the representative and the class members and an assurance of vigorous prosecution by the representative." *Mertz*, 497 F. Supp. at 1139; *see also Horton*, 690 F.2d at 484 ("The adequacy requirement mandates an inquiry into the zeal and competence of the representative[s'] counsel and into the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees."); *and see Abboud*, *supra*, 2020 WL 5526557, \*4 (Proposed class plaintiffs' assertion who is willing and able to take an active role in the litigation sufficient). Here each proposed class representative has both stated and shown an intention to see the suit through. Adequacy of the class representatives is clear, and Rule 23(a)(4) is met.

The second issue identified in *Horton* above is the "zeal and competence of representatives counsel…" *Id.* The Fifth Circuit has stated that when unchallenged, class counsel's competency can be presumed. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 481 n.12 (5th Cir. 2001) (while also noting burden of demonstrating all elements of Rule 23(a) remain on plaintiff). In this case, NCLA was formed for and has as its mission taking on cases like this. Vecchione Decl. ¶¶ 3, 5, 7. The Founder of the organization is the chief academic instigator behind the Administrative law movement. *Id.* . ¶ 4. In this manner it is like the American Civil Liberties Union, membership in which has been cited as a factor in complying with this prong of Rule 23(a). *Horton,* 690 F.2d at 484 (being staff counsel to ACLU as well as behavior on appeal satisfied the zeal and competency test). Further, Mr. Vecchione is familiar with class action process having moved for them when he was a member of the *Aredia Zometa* PSC. *Id.* ¶ 12. Even were that not the case, the Defendants would be hard pressed to maintain any challenge to the zeal and competence of the named counsel given that the official reporters abound with reported decisions of lead counsel, and Ms. Rollins, just five years out of her clerkship, has taken the Government as far as it was willing to go on questions of administrative law. Vecchione Dec. ¶¶ 14-15, 20-21. (and cases cited therein). The class claims have been investigated and local counsel

procured. *Id.* . ¶¶ 16-17.  All of the prerequisites of Rule 23(a) having been satisfied, we turn to Rule 23(b).

B.  <u>All Requirements for an Injunctive Class Under Rule 23(b)(2) Have Been Met</u>

In order to certify a class in the Fifth Circuit under Rule 23(b)(2), there are three components.  As the Fifth Circuit has stated:

> To qualify for class-wide injunctive relief, class members must have been harmed in essentially the same way, and injunctive relief must predominate over monetary damage claims. *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975 (5th Cir. 2000). Additionally, the injunctive relief sought must be specific. Fed. R. Civ. P. 65(d); *see also Ala. Nursing Home Ass'n v. Harris*, 617 F.2d 385, 387–88 (5th Cir. 1980).

*Maldanado v. Ochsner Clinic Foundation*, 493 F.3d 521, 524 (5th Cir. 2007).

These three elements have also been approved by the Supreme Court's holding in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360–61 (2011) (" In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant."); *and see M.D. v. Perry*, 294 F.R.D. at 30 (laying out the three parts of *Maldanado* and noting the *Wal-Mart* decision's affirmation of that approach).

At the class-certification stage there is no need to determine the precise terms of the injunction.  *M.D. v. Perry*, 294 F.R.D. at 30.  It is sufficient at the class-certification stage to simply demonstrate that an injunction specific enough to meet Fed. R. Civ. P. 65 (d)'s requirements can be conceived.  *Id.*

Here, as has been amply demonstrated by the arguments on commonality and typicality, these are claims of unlawfulness and unconstitutionality of an agency regulation.  These constitutional harms are the same, indeed uniform, to every charter boat fishing permit holder.  The Defendants may claim that the proprietary information is different for every permit holder or that there may be different

21

types of surveillance equipment approved, but these are immaterial to the constitutional and statutory analysis.  The plaintiffs are not seeking money damages.[4]   A simple perusal of the Prayer for Relief demonstrates this.  Complaint, Prayer for Relief.  They simply demand an injunction and declaratory relief that the Defendants not implement the unlawful portions of the Final Rule against themselves or any member of the class.  The type of injunction they seek, other than attorney's fees and such other award as the court may deem just and proper, meets all the requirements laid out by the Fifth Circuit: all Plaintiffs are harmed in the same way, injunctive relief not only predominates but is the prime reason for the suit—to get an order stopping this intrusion, and the injunctive requests are all specific but not tailored to individual plaintiffs.  Any one of these requests in the Prayer for Relief is specific enough to meet any standard this court might impose under Fifth Circuit precedent, to wit:

> A. Declaratory judgment that the Gulf-For-hire Reporting Amendment implemented by the Final Rule violates the Fourth, Fifth, and Ninth Amendments of the United States Constitution because warrantless 24-hour GPS surveillance is repugnant to the Constitutionally protected freedom from an unreasonable governmental search and seizure, protection against deprivation of property without adequate due process of law, and by interfering with freedom of movement, free enterprise, and right to privacy.
> B. Declaratory judgment that Plaintiffs have a reasonable expectation of privacy from the 24-hour GPS surveillance of their movements out on the sea.
> C. Declaratory judgment that, if paid for by Plaintiffs, the VMS and the data it collects is their property, and that Defendants trespass into Plaintiffs' property without due process of law by forcing Plaintiffs to hand over data.
> D. Declaratory judgment that the sharing of such data and information with law enforcement agencies in order to attain information to use in a potential prosecutorial action is per se in violation of the Fourth Amendment.[5]
> E. Declaratory judgment that the Gulf-For-hire Reporting Amendment implemented by the Final Rule violates the United States Constitution's Article I because Congress did not empower the Defendants to conduct warrantless 24-hour GPS surveillance or to force industry financing of the VMS device that enables that illegal search.
> F. Declaratory judgment holding unlawful and setting aside the Final Rule under the MSA.

---

[4] There is a request for attorney's fees under applicable law and whatever costs and fees are allowed in a class action, but these are incidental to the claims and are not claims for money damages for the class.

[5] It is also a violation of the 5th Amendment but this is still a request for injunctive relief.

G. Declaratory judgment holding unlawful and setting aside the Gulf-For-hire Reporting Amendment and the Final Rule under the APA.

H. Declaratory judgment that the Gulf-For-hire Reporting Amendment implemented by the Final Rule is void and unenforceable under the RFA.

I. Injunctive relief permanently enjoining Defendants from enforcing the Gulf-For-hire Reporting Amendment and the Final Rule, from requiring Plaintiffs to purchase and maintain the VMS, and from requiring Plaintiffs to declare where they are going when they leave port, unless they are going fishing under their government permit.

Complaint, Prayer for Relief, A-I.

Any one of these injunctive remedies would support a class action, and all of them together more than suffice. The Declarations submitted with this motion, the Complaint itself and the nature of the regulation assailed all strictly comply with the considerations this Circuit requires for granting a motion for class certification. The class is identifiable and wholly within Defendants' knowledge and can be given such notice as the Court deems adequate at the appropriate time after discovery.

## IV. CONCLUSION

For all the reasons stated and upon the entire record herein, the Plaintiffs respectfully request that the motion for class certification be granted.

Dated: November 19, 2020                       Respectfully submitted,

**GORDON, ARATA, MONTGOMERY, BARNETT, McCOLLAM, DUPLANTIS & EAGAN, LLC**

By: /s/_____
A. Gregory Grimsal (#06332)
Kristina M. Lagasse (#38310)
201 St. Charles Avenue, 40th Floor
New Orleans, Louisiana 70170-4000
Telephone: (504) 582-1111
Facsimile: (504) 582-1121
Email: ggrimsal@gamb.com
klagasse@gamb.com

**NEW CIVIL LIBERTIES ALLIANCE**

23

By: /s/ John J. Vecchione
John J. Vecchione
*Admitted pro hac vice*
Kara Rollins
*Admitted pro hac vice*
1225 19th Street NW, Suite 450
Washington, DC 20036
Telephone: (202) 869-5210
Email: john.vecchione@ncla.legal
kara.rollins@ncla.legal

*Counsel for Plaintiffs*