IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RIVERS END OUTFITTERS, LLC, et al.,** | : | Civil Action No. 2:20-cv-2312 |
| | : | |
| *Plaintiffs*, | : | Section "E" (1) |
| | : | |
| v. | : | Judge Susie Morgan |
| | : | |
| **U.S. DEPARTMENT OF COMMERCE, et al.,** | : | Magistrate Judge Janis van Meerveld |
| | : | |
| | : | |
| | : | |
| | : | Reply Brief Motion to Certify Class |
| *Defendants*. | : | (Oral Argument Requested) |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO CERTIFY CLASS**

The Defendants, in their Memorandum in Opposition to the Motion to Certify the Class (Defendants' Op.") (ECF No. 28) in this matter, do not seriously join issue on any of the standards or facts in the Plaintiffs' moving brief. These items should be treated as conceded. *See Pacheco v. St. Mary's University,* No. 15-cv-1131, 2017 WL 2670578 n. 5 (W.D. Texas) (failing to address argument in opposition concedes the issue and conceding breach of contract argument). Instead, they ask the Court not to grant the motion for two peripheral reasons: 1) because injunctive and declaratory relief is requested, there is no need for a class action, and 2) some charter boat captains have opined they want some of what Defendants propose on "monitoring" and claim unanimity is needed to certify a class or that the class representatives are at odds with some members of the class. Neither argument is well taken, and the Court should grant the motion which is in accord with the statute, the law of this circuit, and the best interests of the class.

I.        <u>An Injunctive Class Does Not Make Class Certification Inappropriate</u>

Defendants' contend that because an injunction against the defendants would benefit all class members no class certification is necessary, and the costs outweigh the benefits. Defendants' Op. at 4. The chief precedent from this circuit for this proposition is inapposite. In *United Farmworkers of Florida Housing Project, Inc., v. City of Delray Beach, Florida,* 493 F.2d 799 (5th Cir. 1974), only the city and one state agency in Florida were sued. It appears that venue and jurisdiction were only adequate in Palm Beach or at least the State of Florida. It was also a case about racial discrimination which, the court noted, is by definition class discrimination. *Id.* at 812. The Court sidestepped the plaintiffs' argument that it was moving under Rule 23(b)(2), which does not require class notice and would not require delay. More to the point, however, there was also no risk of "dueling decisions" as all the cases would be in Florida. In the instant case, the venue and jurisdiction are spread from Corpus Christi, Texas to Key West, Florida. It covers two circuits and numerous district courts. The Government has already noted for this Court that it has some dissenting charter boat fishermen in its pocket. Defendants' Op. at 12-14 (charter boat captains' comments for electronic reporting and a few for monitoring). As the Complaint in this case states: "On information and belief, the Defendants issued the Final Rule and obtained acquiescence from certain portions of the fishing community by granting special treatment of certain vessels or permit-types, for instance extending fishing days in the Northern Gulf of Mexico." Complaint ¶ 70, ECF No. 1. The citation of these comments (in no way the majority and most for electronic reporting and not 24-hour surveillance) raises the possibility of litigation in other districts or circuits that would raise the specter of dueling judgments, which is one of the factors class-action certification forestalls. Fed.R.Civ. P. 23(b)(1)(B) (individual members' prosecuting could create a risk of incompatible standards). In fact, this circuit has cut back injunctive relief when there was no class action granted. *See Hernandez v. Reno*, 91 F.3d 776, 781 nn. 16, 17 (5th Cir. 1996) (cutting

back the breadth of an injunction to the named parties but giving the trial court discretion to expand the scope of injunction if a class is certified and distinguishing *United Farm Workers of Florida*).

The Defendants also cite *Johnson v. City of Opelousas,* 658 F.2d 1065, 1070 n. 5 (5th Cir. 1981) for the statement that this circuit has not even determined whether a "necessity" prong for class certification exists.  But the key legal ruling in that case was that a class action had many benefits that the individual suit, and denial of class action by the district court, did not.  One of the reasons class certification was appropriate there was that the representative could age out of the category and thus make the challenge to the city ordinance moot.[1]  *Id.* at 1069-70 (reversing denial of class certification even under high standard of "abuse of discretion").  In this case, the ongoing pandemic and economic pressure, as well as forthcoming new regulations on charter boat fishermen, has caused Rivers End Outfitters and its owner Chris Wilson to sell his boat and its permits.[2]  That is why they did not move to become class representatives.  The specter of mootness hovers over anyone in this business in these unprecedented times.  Further, *Wells v. Schweiker*, 536 F.Supp. 1314 (E.D. La. 1982) denying class action status is not dispositive.  Once again, the existence of the "necessity" for class action is acknowledged as being undetermined but more importantly, the Court there had no motion for class certification before it.  *Id.* at 1322.  The court simply denied the class action portion of the Complaint without motion.  The issue had not been truly joined.  Once again, it appeared the real objections were directed in one place, at the administrators in Louisiana.  *Id.*  at 1328-29 (rejecting retention of pendant party jurisdiction after dismissal of federal claims).

---

[1] Once again, *Johnson* was a challenge to just one city or state and the added complication of federal opposition to nationwide injunctions did not exist.

[2] The parties have agreed to drop these plaintiffs from the suit and appropriate papers will be submitted in the New Year.

2

The blithe assumption that if these named plaintiffs are granted individual relief all class members would benefit is not clear from the record or the Government's position. There is no evidence the Defendants will not seek a narrow injunction only as to named plaintiffs as occurred in *Hernandez*, 91 F.3d at 781. But even more pertinent, there is at present a lively controversy as to the propriety of nationwide injunctions issued by district courts. *See Trump v. Hawaii*, __U.S.__, 138 S.Ct. 2392, 2424-2429 (Thomas, J., concurring) (contending nationwide injunctions by district courts are "legally and historically dubious."). Plaintiffs have no wish to wade into this growing controversy, and a grant of class certification would eliminate any problem on the scope of relief as foreshadowed by Justice Thomas and by the Fifth Circuit in *Hernandez*.

Finally, the statute of limitations for facial attacks on Defendants' regulations is ludicrously short—only 30 days. *Goethal v. U.S. Dept. of Commerce*, 854 F.3d 106, 117 (1st Cir. 2017). The class would benefit because regardless of what might happen here or whether the class certification were ultimately upheld, the statute of limitations in federal actions is tolled during the pendency of class actions for each individual member. *American Pipe & Const. Co. v. Utah,* 414 U.S. 538, 554-55 (1974) (statute of limitations tolls for members of the class, so even if class action denied motions to intervene are timely if filed within the statute of limitations after denial of class action). This Court may likely receive interventions or amendments to the Complaint to add numerous parties should the motion be denied.

II.     Disagreement by Some Class Members Does Not Forestall Grant of Class Certification

The Defendants argue that, because there were some comments in favor of mandatory electronic logbooks and some in favor of electronic monitoring, the class cannot be certified. As noted earlier, the Complaint points out that Defendants have "bought off" certain sectors of the fishing community with regulatory benefits. Complaint ¶ 70. The overwhelming commentary received by the agency on tracking and monitoring was negative, which the Defendants do not

2

dispute. Defendants also conflate the issue of electronic reporting of fish catches with the constant surveillance of monitoring problem.³ Comments lambasting or disagreeing with these proposals by affected charter boat owners are legion. AR 7980 ("Requiring me to abide by this propose[d] regulation is absurd."), 7982 ("This is an unnecessary burden for charter boat captains and owners. By implementing measures like this the fishing industry will suffer a complete collapse in the long run."); 7984 ("Let us try and make a living without prying into our personal business. Stick with fish populations and do away with the economists. Apparently you guys must think we don't have anything to do when we get back to the dock. … I would like to vote no on all of your proposals."), 07999 (From Bob Zales II, President of the National Association of Charter Operators (NACO): "Requiring a VMS for charter and headboats is a very bad idea that will create much hardship for owners and customers."); 8005 (objection from head boat owner *who already has a VMS*); 8015 (Texas Fish and Wildlife Director of Coastal Fisheries complaining of cost and make work for charter boat fishermen); 8016-18 (NACO comment approving electronic reporting but critical of VMS and the apparent sham nature of the comment process); 8127 ("I do not support this. It's like an ankle monitor for a criminal!!!! Our fishing spots are protected by us fishermen so we may provide the best fishing experience for our clients. Your proposal gives you direct access to our fishing spots, no, absolutely, no."); 8128 ("Totally opposed to electronic reporting every time I leave the dock or return!!! Get of[f] my freakin' boat!!!); 8128-30 (challenging efficacy and cost of proposals); 81231 (opposing cost and intrusiveness stating: "Why don't you just buy our permits back and put us out of business?"); 8132 (noting proposal was pushed through while many were dealing with a hurricane and that the majority of charter

---

³ Since the filing of the motion to certify, the Defendants have proposed an "app" that requires charter fisher boat operators to tell the government how much they charge their customers, among other intrusive questions that have zero to do with monitoring catches or by-catches. One wonders how many of even these cherry-picked commentators are fine with the intrusive questions having nothing to do with conservation of the fishery now apparent in the app.

2

operators oppose it); 8133 (noting impossibility of the "report everything on a keypad 30 minutes before landing" rule); 8134 (noting adequacy of current system and that regulations are killing charter boats); 8135 (against the GPS and burdensome reporting stating: "Keep It Simple Stupid."); 8136 (against GPS and cost); 8139 ("I do not agree with this invasion of our right to take a recreational party fishing … I have spoken to an attorney about this and he also agrees"); 8140 ("Vote this down."); 8142 ("There is no benefit to this proposed rule.").

The foregoing is just a short sampling and does not include comments of Plaintiffs Rinckey and Walburn.  It reflects the overwhelming sentiment of the charter boat owners' comments, and a few dissenters do not forestall a class action.  Defendants' cases are not to the contrary.  *Troup v. McCart*, 238 F.2d 289 (5th Cir. 1956), denied a class action to aggregate claims in order to make the jurisdictional standard on damages for federal court.  Critically, plaintiff in that corporate action was the only shareholder (member) dissatisfied with the corporate action.  "Neither the pleadings nor proof showed that any other member besides plaintiff was dissatisfied with the new arrangement, and plaintiff did not make any certificate-holder of either class defendants in order to test their attitudes." *Id.* at 294.  Here, the Defendants' examples of the strange Americans who like to be surveilled constantly by the Government and report all their financial, personal and business information to Big Brother in real time are like the outlier plaintiff in *Troup*.  Plaintiffs' motion is primarily under Rule 23b (2).  Unlike so many other cases, there is no financial dispute between the parties as Plaintiffs are not seeking money damages.

Most charter boat captains in the Gulf loathe this expensive panopticon, and the Defendants cannot defeat a class certification by cherry picking outliers.  *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999), found the representatives of a class action against poor ventilation on a casino ship, causing asthma in workers there, adequate even when the representative was a smoker which complicated causation.  *Id.* at 626-27. Worse, this is a case of Constitutional rights.

A class action should not be forestalled by individuals who want their constitutional rights violated. If this standard were adopted, prisoners who challenge prison conditions could be denied class action status by a couple of "trustys" loyal to the warden. *See, e.g., Gates v. Collier*, 501 F.2d 1291, 1308 (5th Cir. 1974) (finding "trusty" system of allowing power by some prisoners over others violated the Constitution).

Tellingly, the Defendants cite no case in the Fifth Circuit where a class action was forestalled because some commentators liked the proposed regulation by the federal government that the majority of affected commentors were against. Finally, there is nothing in the remedies sought by Plaintiffs which would not allow the Defendants' chosen opposition to simply send the Defendants all the VMS data and financial information they liked. Just as you can pay more taxes than you are assessed, you can give up more of your liberties than the law can require. But that fact should not forestall a class action grant.

III.   Conclusion

For all the reasons stated and upon the entire record herein, the Plaintiffs respectfully request that the motion for class certification be granted.

Dated: December 31, 2020                    Respectfully submitted,

 

                                                 **GORDON, ARATA, MONTGOMERY, BARNETT, McCOLLAM, DUPLANTIS & EAGAN, LLC**

                                                 By: /s/_____
A. Gregory Grimsal (#06332)
Kristina M. Lagasse (#38310)
201 St. Charles Avenue, 40th Floor
New Orleans, Louisiana 70170-4000
Telephone: (504) 582-1111
Facsimile: (504) 582-1121
Email: ggrimsal@gamb.com

2

klagasse@gamb.com

**NEW CIVIL LIBERTIES ALLIANCE**

By: /s/ John J. Vecchione
John J. Vecchione
*Admitted pro hac vice*
Kara Rollins
*Admitted pro hac vice*
1225 19th Street NW, Suite 450
Washington, DC 20036
Telephone: (202) 869-5210
Email: john.vecchione@ncla.legal
kara.rollins@ncla.legal

*Counsel for Plaintiffs*