## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MEXICAN GULF**                                        **CIVIL ACTION**
**FISHING COMPANY,**
   **Plaintiffs**

**VERSUS**                                              **NO.  20-2312**

**U.S. DEPARTMENT OF**
**COMMERCE, ET AL.,**                                   **SECTION: "E" (1)**
   **Defendants**

## ORDER AND REASONS

Before the Court is Plaintiffs' motion to certify a class of "Gulf for-hire vessel charter boat owners and operators who are permitted to fish by the Fishery Management Councils of the Gulf of Mexico and South Atlantic and are harmed by the Final Rule."[1]

## BACKGROUND

### The Class Representatives' Claims

Plaintiffs are a group of charter boat captains and owners who take clients fishing in the Gulf of Mexico. Defendants are various federal government agencies and officials, including the United States Department of Commerce ("USDOC"), the National Oceanic and Atmospheric Administration ("NOAA"), and the National Marine Fisheries Service ("NMFS") (the three agencies together are herein referred to as the "Government"). USDOC is the primary agency responsible for domestic marine fisheries in federal waters and has delegated this responsibility to NOAA.[2] NOAA has subdelegated those responsibilities to NMFS.[3]

---

[1] R. Doc. 25. The Government opposes the motion. R. Doc. 28. Plaintiffs filed a reply. R. Doc. 32.
[2] R. Doc. 1 at ¶¶ 21, 23.
[3] *Id.* at ¶ 25.

On July 21, 2020, the Government published a Final Rule requiring Gulf for-hire vessel owners and operators to submit electronic fishing reports "before offloading fish from the vessel, or within 30 minutes after the end of each trip if no fish were landed" and to submit the fishing report "using hardware and software approved by NMFS for use in the Gulf for-hire reporting program. . . ."[4] The Final Rule also requires affected vessels to have NMFS-approved hardware and software with GPS location capabilities that, at a minimum, archive vessel position data during a trip for subsequent transmission to NMFS. . . . The cellular or satellite VMS will need to be permanently affixed to the vessel and have uninterrupted power, unless the owner or operator applies for and is granted an exemption to power-down a cellular or satellite VMS unit."[5] The Final Rule took effect on January 5, 2021.[6]

On August 20, 2020, Plaintiffs filed this action for declaratory relief voiding the Final Rule and injunctive relief enjoining the Government from enforcing the Final Rule.[7]

**<u>The Proposed Class Definition</u>**

On November 19, 2020, Plaintiffs moved to certify the class of "Gulf For-hire vessel charter boat owners and operators who are permitted to fish by the Fishery Management Councils of the Gulf of Mexico and South Atlantic and are harmed by the Final Rule" and to confirm class representatives.[8] In the Final Rule, the Government stated "NMFS expects this final rule to directly affect all vessels with a Federal charter vessel/headboat

---

[4] 85 Fed. Reg. 44005.
[5] 85 Fed. Reg. 44015.
[6] 85 Fed.Reg. 44005.
[7] R. Doc. 1 at ¶ 114. Plaintiffs allege four other "counts" challenging the Final Rule but are not asserting them for the purposes of the class action. *Id.* at ¶¶ 73-105. *See* R. Doc. 25-1 at 5 ("The Complaint in this matter has four counts prior to the class count. . . .  The Class allegations of Count V and the requested relief are the chief allegations that concern this motion, however.").
[8] R. Doc. 25.

2

permit for Gulf reef fish or Gulf CMP species. The analysis presented in this final rule has been updated to incorporate new data and information that became available after the proposed rule published. . . . As a result, the estimated 1,368 for-hire vessels that will be affected by this final rule are expected to consist of approximately 1,298 charter vessels and 70 headboats."[9] In their Complaint, Plaintiffs allege, "the federal government has records of all these individuals through their permit applications, [therefore] the class can be identified and adequately notified."[10]

**The Proposed Class Representatives**

Plaintiffs move to confirm 11 class representatives: (1) Captain Billy Wells; (2) Mexican Gulf Fishing Company ("Mexican Gulf"); (3) Captain Allen Walburn; (4) A&B Charters ("A&B"); (5) Captain Kraig Dafcik; (6) Captain Joey Dobin; (7) Joey D. Charters; (8) Captain Frank Ventimiglia; (9) Ventimiglia, LLC; (10) Captain Jim Rinckey; and (11) Fishing Charters of Naples.[11] Plaintiffs allege the proposed class representatives all are "owners and operators of charter boat Gulf For-hire boats that have Reef and Pelagic fish licenses from the government and qualify as small businesses. Each representative is very concerned about the violations of the Constitution, personal privacy, costs, expenses and intrusiveness of this rule."[12]

---

[9] 85 Fed.Reg. 44013-14.
[10] R. Doc. 1 at ¶ 11. Plaintiffs clarify that headboats are not included in the proposed class. "While headboats had certain reporting requirements before this rule, charter boats did not. These new VMS-based reporting requirements for charter boats are completely novel to charter boat operators in the Gulf and Southern Atlantic Fisheries." *Id.* at ¶ 53. In the world of commercial passenger fishing, headboats tend to carry more passengers with lower base fees charged at per-person rates whereas charter boats often carry 6 or less passengers with higher base fees charged at group rates. Robert B. Ditton, et al., *Understanding the Market for Charter and Headboat Fishing Services*, MARINE FISHERIES REVIEW, National Oceanic and Atmospheric Administration (1991), https://spo.nmfs.noaa.gov/sites/default/files/pdf-content/mfr531contents.pdf (last accessed June 1, 2021).
[11] R. Doc. 25-1 at 8-12.
[12] *Id.* at 8.

## STANDARD

## Requirements for Class Certification

The party seeking to certify a class bears the burden of demonstrating the case is appropriate for class treatment.[13] Class certification is within the district court's discretion, and the decision is essentially a factual inquiry.[14] The class certification decision should not reach the merits of plaintiffs' claims.[15] It may be necessary, however, for a district court to look beyond the pleadings to understand the claims, defenses, substantive law, and relevant facts to make a meaningful certification decision.[16] The district court must "conduct a rigorous analysis" under Rule 23 before certifying a class and must make specific findings regarding how the case satisfies or fails to satisfy the requirements of Rule 23.[17]

To certify a class, the court must first consider whether the prerequisites of Rule 23(a) have been met. Rule 23(a) states:

> **(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all parties is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.[18]

If all four prerequisites of Rule 23(a) are satisfied, a district court may permit the action to be maintained as a class, so long as the action falls within any one or more of the

---

[13] *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 479, n.4 (5th Cir. 2001); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.").
[14] *Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 502–03 (5th Cir. 2004).
[15] *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996).
[16] *Id.*
[17] *Id.* at 740.
[18] FED. R. CIV. P. 23(a).

three categories established by Rule 23(b). In this case, Plaintiff seeks to certify the class

pursuant to Rule 23(b)(3).[19] Rule 23(b)(3) provides in pertinent part:

> **(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition . . .
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in management of a class action.[20]

Thus, when read together, Rule 23(a) and 23(b)(3) provide six requirements for a group

of claims to be certified as a class action: (1) numerosity, (2) commonality, (3) typicality,

(4) adequacy, (5) predominance, and (6) superiority.[21]

As the parties seeking class certification, Plaintiffs bear the burden of

demonstrating the case is appropriate for class treatment.[22]

## LAW AND ANALYSIS

The Government does not challenge the numerosity, commonality, predominance,

or superiority requirements for class certification.[23] Instead, the Government argues class

certification must be denied for two reasons: (1) a "class action is inappropriate and

unnecessary" when the declaratory and injunctive relief sought "would necessarily affect

all regulated entities;" and (2) "there is significant disagreement within the purported

---

[19] R. Doc. 97-1 at 18.
[20] FED. R. CIV. P. 23(b)(3).
[21] *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 603 (E.D. La. 2006).
[22] *Berger*, 257 F.3d at 479, n.4; *see also Dukes*, 564 U.S. at 349–50.
[23] "Plaintiffs contend that all requirements for an injunctive class under Rule 23(b)(2) have been met. ECF 25, Attachment #1 at 21. That may be." The Government made no arguments challenging these requirements. Apparently, the Government concedes these requirements. R. Doc. 28 at 9.

class."[24] The first reason challenges the *necessity* of the class certification and the second reason challenges the *adequacy* and *typicality* of the proposed class representatives. The Court will consider both challenges, in turn.

### I.    Necessity is not a requirement for class certification.

The Government argues certification is not necessary and is "inappropriate here because if the Court were to grant Plaintiffs the permanent injunction and declaratory relief they seek by vacating the Final Rule, that relief would *automatically* benefit all regulated entities."

Although the Government acknowledges necessity is not a clearly recognized requirement for class certification in the Fifth Circuit, it argues this circuit in *United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach, Florida* "applied a version of the necessity test, holding that where an individual case could secure class-wide injunctive relief class certification is unnecessary."[25] In that case, a group of farmworkers sought access to the local sewer and water services for their housing project but were denied by city and state agencies.[26] The farmworkers sought injunctive relief to be granted the necessary permits and moved for class certification.[27] The trial court denied class action certification because it found the farmworkers were adequately represented by an advocacy organization and the burden of notifying all potential class members would have imposed an unnecessary delay and cost.[28] The Fifth Circuit affirmed the trial court, but on a different basis, reasoning that, because "the requested injunctive

---

[24] R. Doc. 28 at 6.
[25] *Id.* at 10 (citing *United Farmworkers of Fla. Housing Project, Inc., v. City of Delray Beach, Fla.*, 493 F.2d 799 (5th Cir. 1974)).
[26] *United Farmworkers of Fla. Housing Project, Inc., v. City of Delray Beach, Fla.*, 493 F.2d 799, 800-01 (5th Cir. 1974).
[27] *Id.* at 801.
[28] *Id.* at 812.

and declaratory relief will benefit not only the individual appellants and the nonprofit corporation but all other persons subject to the practice under attack," class certification was not necessary.[29]

Plaintiffs response is twofold. First, Plaintiffs argue the Fifth Circuit has not adopted a necessity requirement for class certification.[30] Second, Plaintiffs argue the necessity requirement (if one exists in this circuit) is satisfied regardless because of a substantial risk of mootness.[31] The Fifth Circuit and its sister courts are split on whether a lack of necessity may bar class certification.

In *Dionne v. Bouley*, the First Circuit denied "Rule 23(b)(2) certification where it is a formality or otherwise inappropriate."[32] The court, however, rejected the "mechanical" necessity requirement and instead permitted eligible class certifications to be denied based on particular circumstances.[33] "One factor that a court may properly take into account is the fact—if it be a fact—that the same relief can, for all practical purposes, be obtained through an individual injunction without the complications of a class action."[34]

The Second Circuit has not adopted the necessity requirement but has affirmed trial courts that denied class certification for lack of need.[35] In *Berger v. Heckler*, the trial court denied a motion for class certification as untimely and unnecessary because it had already entered a consent decree in which the government defendant agreed to enforce

---

[29] *Id.*
[30] R. Doc. 32 at 3.
[31] *Id.*
[32] *Dionne v. Bouley*, 757 F.2d 1344, 1356 (1st Cir. 1985)
[33] *Id.*
[34] *Id.*
[35] *See Lisnitzer v. Zucker*, 983 F.3d 578, 588 (2d Cir. 2020) (remanding the case to the trial court, the Fifth Circuit noted "that a class action may not now be needed in this case. After all, the 'prospective relief [which we have ordered] will benefit all members of a proposed class to such an extent that the certification of a class would not further the implementation of the judgment." (quoting *Berger*, 771 F.2d at 1566)).

the court's judgment as to all nonparties. [36] On appeal, the Second Circuit found the "absence of class certification [was] not problematic."[37] Meanwhile, the Third Circuit has held that "necessity is not a freestanding requirement justifying the denial of class certification."[38]

The Sixth Circuit has recognized the confusion the necessity requirement has engendered, but has yet to take a definite stance on the issue.[39] In *Craft v. Memphis Light, Gas & Water Division*, that court affirmed a denial of class certification because it would have "served no useful purpose" if a declaratory ruling would have impacted all similarly situated individuals anyway.[40] Later, the court distinguished *Craft* in *Ball v. Wagers* and reversed a denial of class certification because the trial court's delay "led to the mooting of the name[d] plaintiffs' claims."[41]

The Seventh Circuit has rejected the necessity requirement outright. In *Brown v. Scott*, the court stated, "if the requirements of Rule 23 are satisfied class certification should not be refused because of lack of need."[42]

The Tenth Circuit has found that class certification may be unnecessary when a government defendant would be bound to extend the sought-after relief to all potential class members regardless of class certification. In *Aacen v. San Juan Cnty. Sheriff's Dep't*, the court affirmed the denial of class certification on the ground that it was not necessary

---

[36] *Berger v. Heckler*, 771 F.2d 1556, 1566 (2d Cir. 1985).

[37] *Id.*

[38] *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 838 F.3d 297, 310 (3d Cir. 2016).

[39] *Hill v. Snyder*, 821 F.3d 763, 771 (6th Cir. 2016) ("We also recognize that there is some confusion regarding this circuit's precedent on whether or not class certification is required to extend declaratory and injunctive relief to non-plaintiffs.").

[40] *Craft v. Memphis Light, Gas & Water Div.*, 534 F.2d 684, 686 (6th Cir. 1976).

[41] *Ball v. Wagers*, 795 F.2d 579, 581 (6th Cir. 1986).

[42] *Brown v. Scott*, 602 F.2d 791, 795 (7th Cir. 1979); *Gammon v. GC Services Ltd. P'ship*, 162 F.R.D. 313, 320 (N.D. Ill. June 26, 1995) ("It is well-settled in the Seventh Circuit, however, that a motion for class certification will not be denied merely because certification is not necessary.").

because the holding was "tantamount to a grant of classwide relief."[43] In *Kansas Health Care Ass'n v. Kansas Dept. of Social and Rehab. Servs.*, the court found certification to be "unnecessary" because the invalidation of the state reimbursement plan for certain benefits would have affected the "interests of all the potential class members."[44]

The Fifth Circuit has not decided whether necessity is a requisite to class certification. In *Johnson v. City of Opelousas*, a minor brought a challenge to a local curfew requiring minors to stay home at night.[45] The minor sought class certification on behalf of all similarly-situated minors arguing it was necessary because individual claims ran the risk of becoming moot during the litigation when minor plaintiffs "aged out" of the curfew age limit.[46] The Fifth Circuit declined to decide whether "a trial judge properly may deny certification to an otherwise eligible class solely because of 'lack of need.'"[47] Instead, the Court found the substantial risk of mootness factually presented in that case created a need for class certification regardless of whether establishing need was a requirement in all cases.[48]

In *Mitchell v. Johnston*, Medicaid-eligible children brought suit against the Texas Department of Human Resources for cutbacks divesting them of federally-protected dental benefits.[49] The Fifth Circuit affirmed the trial court's class certification after determining plaintiffs were not "simply attack[ing] the facial validity of a statute," nor did

---

[43] *Aacen v. San Juan Cnty. Sheriff's Dep't*, 944 F.2d 691, 700 (10th Cir. 1991).
[44] *Kansas Health Care Ass'n v. Kansas Dept. of Social and Rehab. Servs.*, 822 F.Supp. 687, 689 (10th Cir. 1993).
[45] *Johnson v. City of Opelousas*, 658 F.2d 1065, 1067 (5th Cir. 1981).
[46] *Id*. at 1069. In fact, the named plaintiff's personal claim was deemed moot because he turned 17 and was "no longer threatened by the prohibitions of the ordinance." *Id*. at 1068.
[47] *Id*. at 1069-70.
[48] *Id*. ("We need not reach that issue in this case because we believe that the substantial risk of mootness presented by the facts of this dispute was sufficient to create a need for certification.").
[49] *Mitchell v. Johnston*, 701 F.2d 337, 340-41 (5th Cir. 1983).

the defendants "agree[] to apply the court's judgment on a classwide basis."[50] The court then found class certification was "necessary" but, in a footnote, again opted to "not decide whether lack of need is a valid basis for denial of class certification."[51]

In *Pederson v. La. State Univ.*, three undergraduate women challenged gender disparities in LSU's intercollegiate sports programs and sought class certification for similarly situated students.[52] The trial court granted provisional certification and then decertified the class for failure to meet the numerosity requirement under Rule 23(a) and, alternatively, for lack of need.[53] The students appealed the decertification. The Fifth Circuit overturned the trial court's decision on the numerosity issue alone,[54] explaining:

> This Court, in the past, declined to decide whether necessity can play a role in class certification decisions. We again decline to decide this question. We simply decide that, if indeed a necessity requirement exists, the substantial risk of mootness here created a necessity for class certification in this case, and the district court abused its discretion in finding no necessity for a class.[55]

District courts in this circuit have repeatedly recognized that the lack of need is not a ground for denial of class certification so long as Rule 23's requirements are satisfied.[56]

---

[50] *Id.* at 345.

[51] *Id.* at 345 n.11.

[52] *Pederson v. La. State Univ.*, 213 F.3d 864 (5th Cir. 2000)

[53] *Id.* at 867.

[54] *Id.*

[55] *Id.* at 865 n.8 (5th Cir. 2000) (citing *Johnson v. City of Opelousas*, 658 F.2d 1065, 1069–70 (5th Cir.1981)).

[56] *See Harness v. Hosemann*, Civ. No. 3:17-cv-791-DPJ-FKB, 2019 WL 613380 at *2 (S.D. Miss. Feb. 13, 2019) ("Hosemann understandably construes this language as suggesting that courts must deny unnecessary certifications—even when Rule 23 is satisfied. But the Fifth Circuit has not read *United Farmworkers* as adopting a necessity requirement."); *Daves v. Dallas Cnty, Tex.*, Civ. No. 3:18-cv-154-N, 2018 WL 4537202 at *3 (N.D. Tex. Sept., 20, 2018) (declining to deny class certification due to lack of need and noting that "the Fifth Circuit [is] yet to pick one side over the other"); *Johnson v. State of Miss.*, 78 F.R.D. 37, 39 (N.D.Miss. Aug. 25, 1977) ("The Seventh Circuit held in *Fujishima v. Board of Education*, 460 F.2d 1355, 1360 (1972) '(i)f the prerequisites and conditions of Fed.R.Civ.P. 23 are met, a court may not deny class status because there is no "need" for it.' The court adheres to this view.").

In fact, one court has held a court may abuse its discretion if it refuses "to certify an otherwise appropriate class because of 'lack of need' when there is a risk of mootness."[57]

In 2010, the Supreme Court addressed whether a state law precluding class actions seeking penalties or statutory minimum damages precluded a federal distrit court sitting in diversity from entertaining a class action under Rule 23. The Supreme Court held Rule 23 did not address only whether claims made eligible for class treatment by some other law should be certified as class actions. Instead, the Supreme Court held the class action could be maintained in that diversity action, explaining that the decision whether to bring suit as a class action belongs to Plaintiffs, so long as the requirements of Rule 23 are satisfied:

> Allstate asserts that Rule 23 neither explicitly nor implicitly empowers a federal court "to certify a class in each and every case" where the Rule's criteria are met. *Id.* at 13–14. But that is *exactly* what Rule 23 does: It says that if the prescribed preconditions are satisfied "[a] class action *may be maintained*" (emphasis added)—not "*a class action may be permitted.*" Courts do not maintain actions; litigants do. The discretion suggested by Rule 23's "may" is discretion residing in the plaintiff: He may bring his claim in a class action if he wishes. And like the rest of the Federal Rules of Civil Procedure, Rule 23 *automatically* applies "in all civil actions and proceedings in the United States district courts," Fed. Rule Civ. Proc. 1. See *Califano v. Yamasaki,* 442 U.S. 682, 699–700, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979).[58]

Although *Shady Grove* is not on point, it is instructive as to the Supreme Court's view of Rule 23. If the prescribed conditions of Rule 23 are met, a class action may be entertained.[59]

---

[57] *Daves v. Dallas Cnty, Tex.*, Civ. No. 3:18-cv-154-N, 2018 WL 4537202 at *3 (N.D. Tex. Sept. 20, 2018) (quoting *Johnson v. City of Opelousas*, 658 F.2d 1065, 1070 (5th Cir. 1981)). Denial of certification also might be improper if there is a "possibility of a defendant's non-acquiescence in the court's decision, or where class certification would not burden the court," but because the Court is certifying the action, it is not necessary to address these points. *See Gayle v. Warden Monmouth Cnty Correctional Institution*, 838 F.3d 297, 310 (3d Cir. 2016) (citing *Dionne v. Bouley*, 757 F.2d 1344 (1st Cir. 1985)).

[58] *Shady Grove Othopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399-400 (2010).

[59] The Federal Rules use the word "may" in this context. Fed. R. Civ. P. 23(b).

Even if necessity is required for class certification in the Fifth Circuit, Plaintiffs argue a risk of mootness warrants class certification in this case because the COVID-19 pandemic and economic climate may put the proposed class representatives out of business.[60] In fact, the original lead Plaintiff, Rivers End Outfitting, went out of business after this litigation was filed and has since been dismissed as a party from this action.[61] Other than this solitary event, Plaintiffs present no further evidence that the class representatives' businesses are at imminent risk of closing due to the pandemic or the economy. It is true that, because a class acquires a legal status separate from the interests of the named plaintiffs, class certification would eliminate the risk of mootness.[62] Nevertheless, Plaintiffs have not presented sufficient evidence that the pandemic and the risk of an economic downturn poses a risk to all 11 proposed representatives sufficient to convince the Court that a risk of mootness exists. Unlike the substantial risk of mootness in *Johnson*, in which the named plaintiff inevitably aged out of a local curfew ordinance aimed at teenage youth, going out of business has not been shown to be an inevitable, or likely, risk in this case.

The Government points to two cases in this circuit in which the trial court denied class certification for lack of need, but neither opinion expressly adopted a necessity requirement as a bright-line rule.[63] In *Wells v. Schweiker*, a recipient of public benefits challenged federal and state rules governing the distribution of those benefits on behalf of herself, her children, and persons similarly situated after she was denied benefits. The

---

[60] R. Doc. 32 at 3.

[61] *See* R. Doc. 36 (*Ex Parte* Motion to Dismiss Parties and Change Caption, "Due to a number of factors, including the COVID-19 pandemic and decreased demand for recreational fishing, Plaintiffs Rivers End Outfitters, LLC and Captain Chris Wilson ceased operations on or about November 16, 2020.").

[62] *Murray v. Fidelity Nat'l Financial, Inc.*, 594 F.3d 419 (5th Cir. 2010) (citing *Ziedman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1051 (5th Cir. 1981)).

[63] R. Doc. 28 at 10-12.

federal and state defendants sought to have her case dismissed as moot because they opted to grant her the benefits during the course of the litigation. Another section in this district held her case was not moot because the voluntary act of the defendants did not guarantee they would not deprive her and her children of benefits under the same scheme following the conclusion of the matter. After finding the personal claims were not moot, the court expressly refused to decide whether "certification of 23(b)(2) class actions may be withheld whenever an individual action would suffice to obtain the relief sought."[64] Instead, it found class certification would not be inappropriate "as a matter of course" but was inappropriate in that instance because any "injunctive and declaratory relief would clearly benefit other persons in [her] position."[65]

In *Arnett v. Strayhorn*, an estate administrator challenged the constitutionality of the state's administration of unclaimed private property and sought class certification.[66] The court found the proposed representative lacked standing to bring suit because it was unlikely he would have property subject to the state's unclaimed private property law in the future.[67] The court found "no useful purpose" in a class certification because injunctive relief with respect to the state law would have benefitted all similarly situated individuals outside of the litigation.[68]

Neither *Wells* (a 1982 decision from another section in this district) nor *Arnett* (a 2006 decision from the Western District of Texas) is binding on this Court. Further, both decisions were decided before the Supreme Court's offered guidance on interpreting Rule 23 in *Shady Grove*. Because the Fifth Circuit has not clearly ruled on this question, and

---

[64] *Wells v. Schweiker*, 536 F.Supp. 1314, 1322 (E.D. La. April 14, 1982).
[65] *Id.*
[66] *Arnett v. Strayhorn*, 515 F.Supp.2d 690, 692-93 (W.D. Tex. May 16, 2006).
[67] *Id.* at 697-98.
[68] *Id.*

there is disagreement among district courts in this circuit and our sister circuits, the Court examines the language of Rule 23 to determine whether necessity is statutorily required. As with any statutory question, the Court must begin with the language of the statute.[69] "In determining a statute's plain meaning, [the courts are to] assume that, absent any contrary definition, Congress intends the words in its enactments to carry their ordinary, contemporary, common meaning."[70] The Court finds the statutory language of Rule 23 is not ambiguous. If Rule 23 mandates class certification upon satisfaction of its requirements, then a plain reading of the rule should not be undermined by the additional, jurisprudential doctrine of necessity. This accords with the Supreme Court's reading of Rule 23 in *Shady Grove*: once the rule's preconditions are satisfied, the plaintiffs (not the Court) exercise the discretion in maintaining a class action.[71] It is not this Court's place to substitute its judgment for that of Congress when the plain meaning of Rule 23 compels one conclusion. The Court declines to impose additional requirements beyond those found in Rule 23.[72] Rule 23 does not require necessity as a prerequisite for class certification.

## II.    The proposed class representatives are adequate and they all face injury typical of the proposed class members.

In their Complaint, Plaintiffs state "[t]he relief sought is appropriate for the class as a whole as the Plaintiffs are seeking declaratory relief finding the Final Rule void and

---

[69] *Matter of Greenway*, 71 F.3d 1177, 1179 (5th Cir. 1996).

[70] *Id.* (internal quotation marks and citation omitted).

[71] *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399-400 (2010).

[72] In a different action in 2014, this Court denied class certification after finding "a class action is not a superior method to adjudicate the case," but this conclusion was not for lack of necessity. In that matter, difficulties arose over whether each class member was similarly situated under Rule 23's predominance of common issues requirement. *Ticknor v. Rouse's Enters., LLC*, Civ. No. 12-1151, 2014 WL 1764738 at *8, *11 (E.D. La. May 2, 2014) ("The Court finds the common issues involving Rouse's liability for its alleged FACTA violations do not predominate over the individual questions of whether each class member is a "cardholder", a "consumer", and received a receipt.").

injunctive relief that would enjoin the defendants from enforcing the Final Rule. This relief would equally impact the entire class."[73]

## A. Adequacy

The Government argues the "proposed class representatives are not adequate representatives under Rule 23(a)(4) because their interests are not aligned with other individuals in the class."[74] In support, the Government offers a sampling of public comments submitted to NMFS in support of the proposed regulations which ultimately became the Final Rule.[75] The Government argues this "intra-class antagonism" undermines either the adequacy or typicality requirements of 23(a)(4) and that these differences may lead to conflicts between the representatives' interests and class members' interests.[76]

Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class."[77] The Fifth Circuit has determined "the adequacy requirement mandates an inquiry into (1) the zeal and competence of the representatives' counsel and (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees."[78] Overall, the adequacy requirement ensures the named plaintiffs at all times adequately represent the interests of the absent class members.[79] Generally, concerns arise over the relationships between the proposed representatives and their counsel—instead of those between the proposed representative and class members—because "courts fear that a class

---

[73] R. Doc. 1 at ¶ 114.
[74] R. Doc. 28 at 14.
[75] *Id.* at 18-19.
[76] *Id.* at 15-16 (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625-26 (5th Cir. 1999)).
[77] FED. R. CIV. P. 23(a)(4).
[78] *Berger v. Compaq Comput. Corp*, 257 F.3d 475, 479 (5th Cir. 2001) (internal citations omitted).
[79] *Id.* at 480.

representative who is closely associated with the class attorney would allow settlement on terms less favorable to the interests of absent class members."[80] This has not been raised as an issue in this case.

In support of the proposition that antagonism within a class should lead to denial of class certification, the Government points to *Troup v. McCart*.[81] In *Troup*, a certificate holder of an insurance society brought suit for conversion after the insurance society had converted to an insurance company.[82] Defendants argued the representative did not adequately represent the class because the claims were not "common or joint." The court agreed noting "neither the plaintiff nor any other member objected to the conversion when it was taking place. . . Plaintiff did not register his disapproval until more than three years after the conversion. . . [and] [e]very lodge of the Society voted unanimously in favor of the conversion."[83] The factual posture of *Troup* is distinguishable from this action. In *Troup*, a single plaintiff sought to represent an entire class of individuals who had collectively supported the alleged wrong and who did not oppose the alleged wrong after it happened. The court rejected the adequacy of the plaintiff's representation because every other member in the class supported the underlying conduct he was attempting to reverse. In this action, nearly a dozen plaintiffs joined in the suit[84] and Plaintiffs point to the administrative record to show a majority of similarly situated individuals opposed the Final Rule during the notice-and-comment period.[85]

---

[80] *Susman v. Lincoln American Corp.*, 561 F.2d 86, 91 (7th Cir. 1977).
[81] *Troup v. McCart*, 238 F.2d 289 (5th Cir. 1956).
[82] *Id.* at 291.
[83] *Id.* at 294.
[84] R. Doc. 1 at ¶¶ 8-20.
[85] R. Doc. 32 at 2 and 5. A review of the administrative record lodged by the parties clearly shows a majority of interested parties in opposition to the Final Rule. The Government does not present quantification of the comments in favor of the Final Rule to show that a majority support the Final Rule.

The Government next points to *Mullen v. Treasure Chest Casino, LLC* in support of the premise that significant disagreement within a class is a ground for denying class certification.[86] In *Mullen*, floating casino workers brought suit against their employer for exposure to poor air quality aboard the vessel and sought to certify a class action.[87] The employer challenged the adequacy of the representation because the workers "suffered from varied illnesses and [had] varying susceptibilities to respiratory ailments."[88] The Fifth Circuit reasoned that, although there were differences in the ways the representatives and class members might prove causation and damages (e.g., an employee who smokes might have to disprove contributory negligence), such differences did not "affect the alignment of their interests."[89] The Government suggests *Mullen* requires certification to be denied when the interests of named representatives and class members are in conflict. *Mullen* does not support the Government's argument. The *Mullen* court recognized that plaintiffs who have an "insufficient stake in the outcome or interests antagonistic to the unnamed members" may not be adequate representatives.[90] Although the Fifth Circuit recognized that some workers in the proposed class actually supported their employer's position and opposed the lawsuit is sufficient to render the proposed representatives inadequate, the Fifth Circuit found it did not need to address whether 100% agreement between the class representatives and the plaintiffs was required to satisfy Rule 23's adequacy requirement.[91] Instead, the court focused on the "variances in the ways that the Named Plaintiffs and class members [would] prove

---

[86] R. Doc. 28 at 10; *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623 (5th Cir. 1999).
[87] *Id.*
[88] *Id.* at 625.
[89] *Id.* at 626.
[90] *Id.*
[91] *Id.* (quoting *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986)).

causation and damages" and held that this did not affect "the alignment of their interests."[92]

Plaintiffs argue class certification may not be defeated by "cherry picking outliers" within the proposed class who oppose their position.[93] Plaintiffs further argue class certification should not be forestalled "by individuals who want their constitutional rights violated" and analogizes the Government's position to prisoners challenging unconstitutional prison conditions being denied class certification because some prisoners are loyal to the warden.[94]

District courts have held "100% concurrence of interests" is not required for class certification.[95] In *Horton v. Goose Creek Ind. School Dist.*, the Fifth Circuit considered a district court's denial of class certification to a group of students challenging the constitutionality of their school district's use of contraband-sniffing dogs.[96] The Fifth Circuit overturned the denial despite possible antagonism within the class in which some students might have actually supported the use of contraband-sniffing dogs. The *Horton* court noted that "some courts have been content simply to observe that unanimity can never be achieved in large classes" while other courts denied "class certification on the basis of significant disagreement within the class."[97] The *Horton* court recognized that class certification had been denied in cases with "hard evidence of real disagreement."[98]

---

[92] *Id.*
[93] R. Doc. 32 at 6.
[94] *Id.* at 7.
[95] *See Serna v. Trans. Union of Am, AFL-CIO*, Civ. No. 3:13-cv-2469-N, 2014 WL 7721824 at *6 (N.D. Tex. Dec. 3, 2014) ("Serna is just one class member, and he objects to a minor part of just one of several claims. This alone is insufficient to establish inadequacy of representation."); *Wyatt By and Through Rawlins v. Poundstone*, 169 F.R.D. 155 (M.D. Ala. Oct. 3, 1995) ("the question should not be whether there is a 100% concurrence of interests within the class, but rather whether the class as a whole and as to some primary issues being litigated is being adequately represented.").
[96] *Horton v. Goose Creek Ind. School Dist.*, 690 F.2d 470, 474-75 (5th Cir. 1982).
[97] *Id.* at 485.
[98] *Id.*

The *Horton* court concluded class actions could not be denied "in every case in which class members disagree" and reasoned that, as long as the trial court undertakes adequate procedures to protect the interests of antagonistic class members, it may still certify the class.[99] The *Horton* court explained there are "a variety of techniques" available to trial courts and that these may vary case-by-case.[100] When a defendant, in addition to antagonistic class members, "vigorously" opposes class certification, a court "can rely on the defendant to present to the court the arguments supporting the contention of any dissident absentees" that the challenged government action is not unconstitutional.[101]

In this case, the Government has pointed to a "number of comments"—but does not argue it is the majority—from the public in support of the Final Rule.[102] The Government is well-equipped to present to the Court the argument that the Final Rule is constitutional and in accordance with the Administrative Procedure Act. Further, because the subject matter turns on the constitutionality of a government regulation, there are no factual issues that might be raised by antagonistic class members. Consequently, the Court finds the proposed class representatives are adequate under Rule 23(a)(4).

## B. Typicality

Generally, typicality is a requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."[103] "The test for typicality. . . is not demanding [and] focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom

---

[99] *Id.* at 486-87.
[100] *Id.* at 487.
[101] *Id.* at 487-88.
[102] R. Doc. 28 at 17-18.
[103] Fed. R. Civ. P. 23(a)(3).

they purport to represent."[104] "The critical inquiry is whether the class representative's claims have the same essential characteristics of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality."[105] It is Plaintiffs' burden to show the claims or defenses applicable to the class representatives are typical of the class representatives.[106]

The Government has not presented any argument that the proposed representatives' claims would have characteristics different from those of the proposed class. In the affidavits attached to their motion, Plaintiffs address the typicality of each of their proposed representatives. Captain Billy Wells, co-owner of Mexican Gulf Fishing Company, "has been a charter boat captain for more than 15 years and, based on his experience, believes his is typical of the types of charter businesses operating in the Gulf of Mexico."[107] Captain Allen Walburn, owner of A&B Charters, founded his business over 41 years ago and owns several boats with permits for reef and pelagic fishing.[108] Captain Kraig Dafcik has operated a charter boat for over 15 years and "joined this suit because [he is] a typical small charter operator."[109] Captain Frank Ventimiglia is the sole owner of Ventimiglia LLC (d/b/a Sanibel Offshore Fishing Charters) and operates a vessel permitted for commercial use and for reef and pelagic fishing.[110] Captain Jim Rinckey is the owner of Fishing Charters of Naples and holds reef fishing and pelagic permits.[111]

---

[104] *Lightbourn v. City of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997) (citations omitted).
[105] *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001).
[106] *Berger v. Compaq Comput. Corp*, 257 F.3d 475, 479 n. 4 (5th Cir. 2001).
[107] R. Doc. 25-1 at 9; R. Doc. 25-2 at ¶ 6.
[108] R. Doc. 25-3 at ¶ 3.
[109] R. Doc. 25-4 at ¶¶ 7-8.
[110] R. Doc. 25-6 at ¶¶ 2-3, 8.
[111] R. Doc. 25-7 at ¶ 2.

The proposed representatives are charter boat owners, operators, and captains whose claims arise from a similar course of conduct and share the same legal theory as the members of the proposed class. The Government has not pointed to any factual differences which undermine typicality.

The Government alternatively points to a footnote in *Horton v. Goose Creek Ind. School Dist.* to suggest that intra-class antagonism may undermine Rule 23's typicality requirement.[112] The Government does not argue specific points as to typicality. While the Government is correct in its statement that "intra-class antagonism can be analyzed under either the adequacy requirement of Rule 23(a)(4) or the typicality requirement of Rule 23(a)(3),"[113] it neglects to include the entirety of the *Horton* footnote:

> Intra-class antagonism may be analyzed under either Rule 23(a)(4), the adequacy requirement, or Rule 23(a)(3), the typicality requirement. The requirements are closely related, for demanding typicality on the part of the representative helps ensure his adequacy as a representative. We prefer to analyze the question of intra-class antagonism under the requirement that the representative protect adequately the interests of the class rather than under the requirement that his claims be typical, because each class member has the claim asserted by the plaintiffs, so the plaintiffs' claims are typical, but many members do not see it as in their best interests to assert that claim. The real question then is whether, in spite of the typicality of their claims, the named plaintiffs can adequately represent the interests of the class, including any interest in not asserting claims.[114]

When some members of the class hold antagonistic beliefs, the Fifth Circuit analyzes the interests of the parties under the adequacy requirement to determine whether the plaintiffs can adequately represent the class members, because their claims are typical, even if some members do not see it as their best interests to assert the claim. The interests of the proposed class representatives in this case also are adequate and typical under the

---

[112] *Id.* at 15.
[113] *Id.*
[114] *Horton v. Goose Creek Ind. School Dist.*, 690 F.2d 470, 485 n.27 (5th Cir. 1982) (internal citations omitted).

*Horton* analysis. The Court finds the typicality requirement is not defeated by the presence of some antagonistic charter operators.

## **CONCLUSION**

**IT IS ORDERED, ADJUDGED, AND DECREED** that the prerequisites to a class action set forth in Rule 23(a) are satisfied, inasmuch the class is so numerous that joinder of all plaintiffs is impracticable, there are questions of law and fact common to the class, the claims and defenses of class representatives are typical of the claims of the class as a whole, and the class representatives for Plaintiffs will fairly and adequately protect the interests of the proposed class.

**IT IS FURTHER ORDERED** that this action may be maintained as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, inasmuch as the questions of law and/or facts common to the members of the class predominate over questions affecting only individual members, and a class action is superior to other available methods of adjudication of this dispute.

**IT IS FURTHER ORDERED** that the Court finds the proposed class to be adequately defined and clearly ascertainable.

**IT IS FURTHER ORDERED** that, pursuant to Rule 23 of the Federal Rules of Civil Procedure, a class consisting of the following persons shall be certified, which class the Court finds is adequately defined and clearly ascertainable:

> Gulf For-hire vessel charter boat owners and operators who are permitted to fish by the Fishery Management Councils of the Gulf of Mexico and South Atlantic and are harmed by the Final Rule.

**IT IS FURTHER ORDERED** that the class representatives shall be: (1) Captain Billy Wells; (2) Mexican Gulf Fishing Company ("Mexican Gulf"); (3) Captain Allen Walburn; (4) A&B Charters ("A&B"); (5) Captain Kraig Dafcik; (6) Captain Joey Dobin;

(7) Joey D. Charters; (8) Captain Frank Ventimiglia; (9) Ventimiglia, LLC; (10) Captain Jim Rinckey; and (11) Fishing Charters of Naples.

**New Orleans, Louisiana, this 2nd day of June, 2021.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**